### In re WATERMAN STEAMSHIP CORPORATION, Debtor.

**Bankruptcy No. 83 B 11732.**

United States Bankruptcy Court,
S.D. New York.

April 8, 1986.

White & Case by James P. Laughlin, New York City, for debtor and debtor-in-possession.

O'Donnell & Schwartz by Joel C. Glanstein, New York City, for Kathleen D. Jay.

Hahn & Hessan by Jeffrey L. Schwartz, New York City, for Official Creditors Committee.

### DECISION & ORDER

HOWARD C. BUSCHMAN, III, Bankruptcy Judge.

Kathleen D. Jay ("Jay" or the "Claimant") seeks an order from this Court modi-

fying a previous order setting the bar date in this case (the "Bar Order"), to enable her to file a late proof of claim. Her counsel asserts that he did not learn of the Bar Order until September 24, 1985, after the time for filing claims had expired. Notice of the Bar Order was not mailed to Jay or her attorney. Waterman Steamship Corporation (the "Debtor") and the Official Creditors Committee oppose the motion on the grounds that the Debtor had given reasonable and sufficient notice of the Bar Order through publication and that no excusable neglect has been shown to permit the late filing of a claim.

## I.

The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (1984) (the "Code") on December 1, 1983 (the "filing date"). It has remained in possession and operates United States flag cargo vessels in the foreign commerce of the United States pursuant to Operating-Differential Subsidy Agreements with the United States Maritime Administration. Its petition states that the Debtor employed approximately 600 persons at the filing date. Three of its ships are currently in service. As of December 31, 1985, the Debtor employed 177 seagoing personnel and 144 shoreside personnel. Marine personnel have been and are employed aboard ships under the terms of collective bargaining contracts with four maritime unions. The Debtor has diligently prosecuted this bankruptcy and recently filed its plan of reorganization.

Mrs. Jay is the administratrix of the estate of her deceased husband, Edwin W. Jay, and the guardian of their daughter Wendi Jay. Mr. Jay died on May 15, 1983, apparently from peritoneal meosthelioma. During his career as a marine engineer, he worked as a third assistant engineer aboard the S.S. Morning Light, a Waterman steam vessel, for two and one-half months in 1964 (Glanstein Supplemental Reply Affidavit, Exhibit D). Investigations as to the cause of death were apparently begun by Mrs. Jay's attorneys four months after Mr. Jay's death. Separate lawsuits against owners and operators of vessels on which Mr. Jay was employed were not brought until August and September 1985. It is alleged that Mr. Jay's illness and death resulted from exposure to asbestos dust and fibers while employed as a seaman aboard vessels owned or operated by various vessel owners and operators. Her attorneys state that such lawsuits were commenced against the Debtor because, although it was known that the Debtor had filed a petition under the Code, it was believed that the Debtor's plan of reorganization had, by this time, been confirmed, and therefore that the Debtor was no longer undergoing reorganization (Glanstein Affidavit at 1–3).

This Court issued the Bar Order in this bankruptcy on May 4, 1984, pursuant to Rule 3003(c)(3) of the Rules of Bankruptcy Procedure, requiring all entities with a claim against the Debtor to file proofs of claim, by July 20, 1984 or be barred, pursuant to Bankruptcy Rule 3003(c)(2), from pressing that claim against the Debtor. The Bar Order required the Debtor, on or before June 1, 1984, to notify individually every entity known to have an admitted or potential claim against the Debtor, and to give notice to all others by publication of the bar date. Notice of the bar date was published in *The New York Times, The Mobile Press-Register, The New Orleans Times Picayune,* and *The Journal of Commerce* in accordance with the Bar Order. The first of these publications is of national scope and distribution; the second two are published in the ports where the Debtor's operations are concentrated; and the last is devoted to matters of interest to individuals and organizations active in the maritime industry. Following notice in these publications, approximately 2,000 proofs of claim have been filed, over one hundred of which were filed by marine engineers like Mr. Jay who asserted claims arising out of exposure to asbestos (Debtor's Supplemental Answer at 3). Unfortunately, Mrs. Jay did not file a timely proof of claim and her lawsuits naming the Debtor as a defendant

were not commenced until well after the bar date had passed.

Jay's attorneys now state that, because she was unaware of the status of the bankruptcy and the established bar date, and because of the alleged diligence in prosecuting her claim against the Debtor, she should be permitted to file a late proof of claim, in the amount of $4,000,000. They assert that the Debtor, in giving reasonable notice of the bar date, should have personally notified "every former engine department seaman employed on vessels built before 1971 owned or operated by Debtor which uncontrovertedly had asbestos products in the engine room and engine spaces, since the pernicious consequences of exposure to asbestos are well established and all such employees have or had a potential claim." (Glanstein Reply Affidavit at 3).

## II.

The mandate that the Court establish a bar date for the filing of claims in a Chapter 11 case is found in Rule 3003(c)(3) of the Rules of Bankruptcy Procedure (1983). It states that "[t]he court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed."

Absent the setting of a bar date, a Chapter 11 case could not be administered to a conclusion. There would be no time established for the filing of claims. But it is essential to the bar date mechanism that notice be given to creditors consistent with the demands of due process, for as provided in Rule 3003(c)(2), a creditor who fails to file a claim within the time allowed is precluded from being treated as a creditor and from both voting on a plan and receiving a distribution from estate property. Failure to give notice consistent with due process surely constitutes cause under Rule 3003(c)(3). A failure to do so would require that the filing of late claim be permitted.

The test of whether notice comports with due process is that adopted in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) and followed consistently since (*e.g.,*

*Greene v. Lindsey,* 456 U.S. 444, 447, 102 S.Ct. 1874, 1876, 72 L.Ed.2d 249 (1982); *Snidach v. Family Finance Corporation,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *Walker v. City of Hutchinson,* 352 U.S. 112, 115, 77 S.Ct. 200, 202, 1 L.Ed.2d 178 (1956); *Bender v. City of Rochester, New York,* 765 F.2d 7, 10 (2d Cir.1985); *Velaquez v. Thompson,* 321 F.Supp. 34, 49 (S.D.N.Y.1970), *aff'd,* 451 F.2d 202 (2nd Cir.1971)):

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

339 U.S. at 314, 70 S.Ct. at 657. In the application of that test to a case involving notice given by a trustee to the beneficiaries of an investment fund of the time to present objections to the trustee's accounting, the Court distinguished between known and unknown claimants. As to the former, the Court held that publication would not suffice, ruling that "[w]here the names and post office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency." 339 U.S. at 318, 70 S.Ct. at 659.

As to the latter, those claimants whose names and addresses are unknown, the Court sustained the publication in a local newspaper of a notice addressed simply to all claimants. In so ruling, it observed,

> [I]t has been recognized that, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights.

339 U.S. at 317, 70 S.Ct. at 658 (citing cases). But even in these cases, "[t]he means employed must be such as one desirous of actually informing the absentee

might reasonably adopt to accomplish it." 339 U.S. at 315, 70 S.Ct. at 657.

■ Here, it is undisputed that, consistent with *Mullane*, the Debtor gave notice by mail to every entity of whom it was aware might be possessed of a claim, whether such claim was liquidated or unliquidated, contingent or fixed (Debtor's Answer at 9). *See e.g., City of New York v. New York, New Haven & Hartford Railroad Co.*, 344 U.S. 293, 296, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953) (bankruptcy proceeding involving known creditors). This included notice mailed to the Marine Engineers Beneficial Association, the union to which Mr. Jay belonged for over 22 years (Glanstein Supplemental Reply Affidavit, Exhibit I). Similarly, notice by publication in a national newspaper, a newspaper directed to the maritime industry, and the local newspapers in the Debtor's principal United States ports was clearly given in a manner consistent with an attempt to actually inform unknown possible claimants of the bar date.

Nevertheless, it is asserted that the Debtor should have done more. Specifically, it is averred that because the Debtor was a named defendant in a civil action brought by another marine engineer claiming injury related to exposure to asbestos, it should have given every marine engineer employed on one of its vessels personal notice of the bar date, as being a "potential" claimant. But no claim is made that the Debtor has a record of Mr. Jay's name and address or knew of his illness and death and possible claim until the attorney representing his estate commenced suit against the Debtor in 1985, well beyond the time when notice was given and the bar date.

Recognizing this, the Claimant asserts that, regardless of the circumstances here, the Debtor should have taken the extra step of culling not its own records, but the records of the various unions with whom it had entered into collective bargaining agreements over the past 20 years in order to find possible claimants having claims similar to those asserted by others. That others who are similarly situated may have tort claims does not lead to the conclusion that all may have such claims. Rather, one would think that those who have claims would assert them in a fashion that the Debtor, as opposed to others, would learn of them. It is one thing where potential claimants have invested in a fund and have a common claim. Looking at the records of a third party might then be reasonable. It is another to search for those who might have been or not have been injured. All that is required is that "notice be reasonably calculated under all the circumstances," *Mullane*, 339 U.S. at 314, 70 S.Ct. at 657, and here it is plainly apparent that it was. First, the use of specifically oriented publications and giving notice to the union of which Mr. Jay was a member is strong evidence of such. Second, the undisputed large number of claims generated by the published notice, including over one hundred from marine engineers like Mr. Jay, solidifies that conclusion. While it is to be regretted that the attorneys for Mr. Jay's estate apparently did not read the notice, in light of these circumstances, it does not appear that the notice was unreasonable. *E.g., Matter of GAC Corporation*, 6 B.R. 981, 990 (S.D.Fla.1980), *aff'd*, 681 F.2d 1295 (11th Cir.1982).

### III.

■ Nor does it appear that other cause exists for extending the bar date as to permit the late filing of a claim as required by Rule 3003(c)(3). To that end, the claimant bears the burden of showing circumstances constituting excusable neglect. *In re O.P.M. Leasing Services, Inc.*, 48 B.R. 824, 830, 12 C.B.C.2d 1322, 13 B.C.D. 144 (S.D.N.Y.1985). Excusable neglect is present when a party fails to meet an obligation due to "unique or extraordinary" circumstances, *Maryland Casualty Company v. Conner*, 382 F.2d 13, 17 (10th Cir.1967), which are "beyond the reasonable control" of the delinquent party, *In the Matter of Manning*, 4 B.C.D. 304, 305 (Bankr.D.Conn.1978). *See In re Figueroa*, 33 B.R. 298, 301, 10 B.C.D. 1459 (Bankr.S.

D.N.Y.1983). The party seeking the extension has the burden in this regard. *In re Horvath*, 20 B.R. 962, 966, 6 C.B.C.2d 1302 (Bankr.S.D.N.Y.1982). Three factors are considered in determining whether there is excusable neglect warranting relief: (i) the adequacy of the notice provided, (ii) the source of the delay, and (iii) the prejudice, if any, that will inure to the debtor should the objection be allowed. *Id.* at 966–67; *In re O.P.M. Leasing Services*, 48 B.R. at 830–831, *In re Heyward*, 15 B.R. 629, 636 (Bankr.E.D.N.Y.1981).

Here is plainly apparent that notice was more than required by *Mullane* and that the delay is due to the failure of counsel to protect his client. His mistaken belief that the Debtor's plan of reorganization had been confirmed does not excuse a late filing. *See e.g., In re McCoy Management Services, Inc.*, 44 B.R. 215, 217, 12 B.C.D. 531 (Bankr.W.D.Ky.1984); *In re Cmehil*, 43 B.R. 404, 408 (Bankr.N.D.Ohio 1984). No reason has been advanced by Jay's counsel for delaying lawsuits against the Debtor until mid-1985, when he admits of knowing the Debtor's potential liability in January 1984 (Glanstein Affidavit at 1–2), seven months before the bar date. While this is an unfortunate result, after a reasonable time, a debtor must be able to start its process of reorganization and its creditors must be able to learn what they will receive under a plan. *Hoos & Co. v. Dynamics Corporation of America*, 570 F.2d 433, 439 (2nd Cir.1978); *see also In re Harbour House Operating Corp.*, 724 F.2d 1, 2–3 (1st Cir.1983); *Levine v. First National Bank of Lincolnwood (In re Evanston Motor Co., Inc.)*, 26 B.R. 998, 1000 (N.D.Ill.1983), *aff'd*, 735 F.2d 1029 (7th Cir. 1984); *In re Foster*, 11 B.R. 476, 478, 7 B.C.D. 1011, 4 C.B.C.2d 763 (Bankr.S.D.Cal. 1981) (Chapter 13 case); *Abraham & Straus v. Joseph Francis & Kenneth Kirschenbaum (In re Francis)*, 15 B.R. 998, 8 B.C.D. 656, 660, 5 C.B.C.2d 1101 (Bankr.E. D.N.Y.1981); 3 L. King, *Collier on Bankruptcy*, ¶ 502.01 (15th ed. 1985). A first step in that endeavor is identification by a debtor of its creditor body and ascertainment of the dollar amount of claims out-

standing. Failure to so proceed prejudices the entire community of interests especially where the Debtor has filed its plan of reorganization after having successfully identified the universe of claims and having come to terms with many of its claimants.

Accordingly, the Court having found that the notice by publication afforded the Claimant due process, the motion for leave to file a late proof of claim must be denied.

IT IS SO ORDERED.