In re CHATEAUGAY CORPORATION, Reomar, Inc., The LTV Corporation, et al., Debtors.

In re LTV STEEL COMPANY, INC. and Tuscaloosa Energy Corporation, Debtors.

Bankruptcy Nos. 86 B 11270(BRL)–86 B 11334(BRL), 86 B 11402(BRL), 86 B 11464(BRL), 86 B 11273(BRL) and 86 B 11327(BRL).

United States Bankruptcy Court, S.D. New York.

Aug. 16, 1989.

Davis Polk & Wardwell (Sharon Katz, David Murray, of counsel), New York City, for debtors.

Levin & Weintraub & Crames, New York City, for debtors.

Townsend Rabinowitz Pantaleoni & Valente by Francis L. Valente, Jr., New York City, for The Sutton Coal Trust.

MEMORANDUM DECISION AND ORDER ON CROSS–MOTION FOR LEAVE TO FILE A LATE PROOF OF CLAIM AND FOR RELIEF FROM THE AUTOMATIC STAY

Before BURTON R. LIFLAND, Chief Judge.

## I. BACKGROUND

On July 17, 1986 (the "Filing Date") and thereafter, the LTV Corporation and sixty-six of its subsidiaries, including LTV Steel Company Inc. ("LTV Steel") and Tuscaloosa Energy Corporation ("TEC"), (collectively, the "Debtors"), filed for reorganization under Chapter 11 of the Bankruptcy Code (the "Code") and were continued in the management, operation and possession of their businesses and properties as debtors-in-possession. Since the Filing Date, all litigation pending against LTV Steel, including the action commenced in 1985 by the Sutton Coal Trust (the "Trust") in Pike Circuit Court, captioned *Vera C. Rocke, et al. v. Republic Steel Corp. et al.,* No. 85–CI–1126 (the "*Rocke* Action"), involving property of the Debtors, has been stayed by operation of § 362 of the Code.

The complaint filed in the *Rocke* Action alleges a claim of title to certain real property owned by LTV Steel, and seeks (i) a determination to quiet title, (ii) an accounting with respect to all coal mined from the property and (iii) damages in an amount equal to the value of the coal mined by the Debtors. LTV denied the Trust's allegations and, as of the Filing Date, the Trust's claim was listed as "disputed" in the schedules filed by LTV Steel.

By order dated July 30, 1987 (the "Bar Order"), this Court established November 30, 1987 (the "Bar Date") as the deadline for filing proofs of claim in these proceedings. An official notice of the Bar Date was published in 186 newspapers throughout the country, including the Louisville Courier-Journal, the Lexington Herald Leader, and the Pikeville Appalachian News. In addition, as set forth in the Affidavit of John L. Kacergis dated January 10, 1989, a total of four Bar Date notices were sent to the Trust and to its attorney in the *Rocke* Action, J.K. Wells, with proof of claim forms and instructions. The Trust, however, failed to file a timely notice of claim.

On December 15, 1988, the Trust filed a notice of *lis pendens* relating to the *Rocke* Action. Then, on December 28, 1988, the Debtors submitted an application (the "Application") to this Court for an order authorizing the sale of certain mining property, including the property at issue in the *Rocke* Action, to Elkorn Development Corporation pursuant to the terms and subject to the conditions of the Acquisition Agreement dated October 26, 1988. Debtors' Application sought, *inter alia,* an order decreeing and adjudging the *lis pendens* notice filed by the Trust in connection with the *Rocke* Action in violation of § 362 of the Code and null and void and without force or effect. Such relief was granted by this Court on January 12, 1989.

By letter dated December 30, 1988 and addressed to this Court, the Trust submitted an objection to the Application and attempted to file a late proof of claim with respect to the *Rocke* Action. On January 6, 1989, the Trust filed a formal objection and submitted a cross-motion for relief from the automatic stay or, in the alternative, a determination of its claim by this Court.

A hearing on the Application and the cross-motion was held on January 12, 1989. The Trust withdrew its objection and an auction of the property ensued. The Trust's cross-motion, to the extent that it sought permission to file a late proof of claim and relief from the automatic stay, was adjourned.

By order of this Court dated January 12, 1989, the Application, as modified at the hearing, was approved. The order was affirmed in the District Court (Wood, J.) on May 25, 1989. Thereafter, on June 19, 1989, the United Mine Workers of America filed a notice of appeal to the Court of Appeals for the Second Circuit with respect to issues not germane to the instant matter.

## II. DISCUSSION

### A) LEAVE TO FILE A LATE PROOF OF CLAIM.

Permission to file a late proof of claim is governed by Bankruptcy Rules Rule 3003(c)(3) and 9006(b). *In re Sasson Jeans, Inc.*, 96 B.R. 457, 459 (Bankr.S.D.N.Y. 1989); *In re O.P.M. Leasing Serv., Inc.*, 35 B.R. 854, 864 (Bankr. S.D.N.Y.1983), *aff'd in part*, 48 B.R. 824 (S.D.N.Y.1985); *see also, In re Vertientes, Ltd.*, 845 F.2d 57, 59–60 (3rd Cir.1988); *In re South Atlantic Financial Corp.*, 767 F.2d 814, 817 (11th Cir.1985), *cert. denied*, 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986). Bankruptcy Rule 3003(c)(3) provides: "The Court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed." However, Bankruptcy Rule 3003(c)(3) must be read in conjunction with Bankruptcy Rule 9006(b). *Sasson Jeans*, 96 B.R. at 459; (citing *In re South Atlantic Financial Corp.*, 767 F.2d at 817). Bankruptcy Rule 9006(b) provides in pertinent part:

(b) Enlargement.

(1) *In General.* Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by notice given thereunder or by order of court, the court for cause shown may at any time in its discretion ... (2) on motion made after the expiration of the specified period permit the act to be done where failure to act was the result of *excusable neglect.* (emphasis added)

There has been considerable precedent in both the Southern District of New York and in other courts regarding the "excusable neglect" standard. *Sasson Jeans*, 96 B.R. at 459; *see e.g., In re O.P.M. Leasing Services, Inc.*, 35 B.R. 854 (Bankr.S.D.N.Y. 1983), *aff'd in part*, 48 B.R. 824 (S.D.N.Y. 1985); *In re Waterman S.S. Corp.*, 59 B.R. 724 (Bankr.S.D.N.Y.1986); *Miller v. Austin*, 72 B.R. 893 (S.D.N.Y.1987).

The words "excusable neglect" are "words of art" which are not defined in either the Bankruptcy Rules or Code. *Sasson Jeans*, 96 B.R. at 459; *In re Horvath*, 20 B.R. at 966; *In re Manning*, 4 B.C.D. 304, 305 (Bankr.D.Conn.1978).

This Court has recently reiterated the narrow contours of the excusable neglect standard:

Courts have interpreted "excusable neglect" to be the "failure to timely perform a duty due to circumstances which were beyond the reasonable control of the person whose duty it was to perform." "An applicant relying upon 'excusable neglect' must cite circumstances that are unique or extraordinary." "An 'extension will not be granted where the delay could have been prevented by the diligence of the party. Ordinary negligence is not enough.'"

*Sasson Jeans*, 96 B.R. at 459 (citations omitted); *accord, In re LTV Steel Co.*, No. 86 B 11273 (Bankr.S.D.N.Y. June 29, 1989) (Decision on Motion for Filing a Proof of Claim *Nunc Pro Tunc*).

The party seeking relief to file a late proof of claim has the burden of demonstrating circumstances constituting "excusable neglect". *Sasson Jeans*, 96 B.R. at 460; *In re Horvath*, 20 B.R. 962, 966 (Bankr.S.D.N.Y.1982); *In re O.P.M. Leasing*, 48 B.R. at 830.

There are, *inter alia*, three factors to be considered in determining whether the movant has demonstrated the existence of excusable neglect: (1) the adequacy of

notice provided; (2) the source of the delay and the sophistication of the creditor; and (3) the prejudice, if any, that will inure to the debtor should the objection be allowed. *Sasson Jeans*, 96 B.R. at 460 (citing *In re O.P.M. Leasing*, 35 B.R. at 866; *In re Horvath*, 20 B.R. at 966.

### 1) THE ADEQUACY OF NOTICE PROVIDED.

■ It is undisputed based on the record before this Court that the Trust received adequate notice of the Bar Date. As stated previously, an official notice of the Bar Date was published in 186 newspapers throughout the country, including the Louisville Courier–Journal, the Lexington Herald Leader, and the Pikeville Appalachian News. Moreover, it has not been disputed that as stated in the Affidavit of John L. Kacergis dated January 10, 1989, a total of four Bar Date notices were sent to the Trust and to its former counsel in the *Rocke* Action, J.K. Wells, with proof of claim forms and instructions. In fact, the Trust's former counsel clearly was aware of the Debtors' reorganization proceeding as early as July 31, 1986 and indeed informed the Trust at that time. Valente Aff., Exhibit C, Letter dated July 31, 1986.

### 2) THE SOURCE OF THE DELAY AND THE SOPHISTICATION OF THE CREDITOR.

Although the Trust asserts that it has overcome its burden and has demonstrated "excusable neglect", this Court is not likewise persuaded that such a finding is warranted under the circumstances in this case. The Trust's former counsel admits that his failure to file a proof of claim was the result of a deliberate course of action undertaken because "the size of the acreage involved ... was too insignificant to file a claim in the bankruptcy proceeding." Valente Aff. at 3, 6. As stated by this Court previously in *O.P.M. Leasing, supra:*

> it is clear that when a party fails to file in a timely manner due to a 'chosen course of action and the circumstances were within the party's reasonable control,' the courts will not offer relief from the choice taken." *In re Gem Rail*

*Corp.*, 12 B.R. 929, 931–32 (Bankr.E.D. Pa.1981); *See In re Oakton Beach & Tennis Club*, 9 B.R. 201, 205 (Bankr.E.D. Wis.1981); *In re Valley Fair Corporation*, 4 B.R. 564, 567–68 (Bankr.S.D.N.Y. 1980). An extension will not be granted if the delay was due to the lack of diligence by the applicant. *In re Breining*, 8 B.R. 17, 21 (Bankr.S.D.N.Y.1980).

*O.P.M. Leasing*, 35 B.R. at 867.

Similarly, the Trust's assertion that its former counsel's decision not to file a proof of claim was arrived at erroneously, also does not meet the "excusable neglect" criteria. The Trust has not demonstrated that the alleged error was undiscoverable in the exercise of ordinary diligence. Indeed, the Trust even admits that "Mr. Wells' affidavit reveals that he was operating on the basis of facts known to him, but which subsequent investigation by the trustees have been found to be inaccurate." (*See*, Affidavit of Francis L. Valente, Jr. at 6.) Hence, the Trust's counsel "did indeed have such reasonable control over the events relating to this reorganization as to render it possible for [him] to have acted in a timely fashion." *Sasson Jeans*, 96 B.R. at 460 (quoting *O.P.M. Leasing*, 35 B.R. at 867.) Additionally, courts have uniformly denied requests for leave to file a late proof of claim under such circumstances. *See, e.g., In re South Atlantic Financial*, 767 F.2d at 818–19; *Miller*, 72 B.R. at 899; *In re O.P.M. Leasing*, 48 B.R. at 831; *In re Sasson Jeans*, 96 B.R. at 460; *In re Century Brass Prods.*, 72 B.R. 68, 70 (Bankr. D.Conn.1987); *In re Waterman Steamship Corp.*, 59 B.R. at 728. There has been no demonstration on the part of the Trust that the circumstances as presented "are unique or extraordinary or were beyond the reasonable control of the person whose duty it was to perform." *In re LTV Steel Co.*, No. 86 B 11273, unpublished slip op. at 11 (Bankr.S.D.N.Y. June 29, 1989).

### 3) THE PREJUDICE THAT WILL INURE TO THE DEBTOR.

Finally, a purported lack of prejudice to the debtor alone is insufficient to warrant leave to file a late proof of claim. *See, e.g.,*

*In re Vertientes*, 845 F.2d at 60. However, in this case the Debtors would clearly be prejudiced if the Trust was permitted to file a claim of uncertain proportions at this late stage of the proceedings. As was recently stated in another matter in these bankruptcy proceedings involving a similar request for permission to file a late proof of claim:

> More vigilant creditors should not be penalized at this late date by a creditor who did not timely file its proof of claim. Moreover, such an [allowance] is basically an invitation for this Court to open a floodgate to allow ... creditors to file late proofs of claims. Although each individual creditor's claim may not significantly alter the overall distribution scheme, the aggregate of these late proofs of claims could undoubtedly have a devastating effect on the entire reorganization.

*In re LTV Steel Co., supra* at 11. Additionally, "permitting this exceptionally late filing would set a dangerous precedent for other creditors who similarly, and perhaps for tactical reasons, have sat on their rights without any other reasonable justification therefore." *O.P.M. Leasing*, 35 B.R. at 867.

Accordingly, the Trust's request for permission to file a late proof of claim is hereby denied.

## B) RELIEF FROM THE AUTOMATIC STAY.

 Pursuant to § 362(d) of the Code, a court may grant relief from the automatic stay "for cause".[1] It appears that the Trust's rationale for continuing the *Rocke* Action is two-fold: 1) to recover damages,

and 2) to quiet title. However, neither reason is compelling; the Trust has failed to demonstrate sufficient cause to warrant relief from the stay.

This Court agrees with the Debtors that it would serve absolutely no purpose to permit the *Rocke* Action to proceed at this time in light of this Court's present ruling with respect to the Trust's recourse against the Debtors' estate for damages. The Trust's motion for relief from the stay is moot in this regard. The Trust is precluded from recovering against the Debtors in the *Rocke* Action pursuant to federal bankruptcy law, *i.e.*, § 1141(d)[2] of the Code and Bankruptcy Rule 3002(a);[3] and the Bar Order which provides, *inter alia*, that a creditor who fails to file a timely proof of claim "shall not with respect to any such claim or claims, be treated as a creditor of the Debtors for purposes of voting upon, or receiving a distribution under, any plan of reorganization and shall be forever barred from asserting any such claim or claims against any of the Debtors...."

Additionally, as stated in the uncontested Affidavit of Kay Woods at ¶ 2 & 3 dated July 6, 1989, the Debtors have not been actively drilling or otherwise using the property in question. Indeed, Debtors conveyed to Ashland Oil, Inc. pre-petition all of their rights, title, and interests in and to any oil and gas associated with the property pursuant to a Deed of Conveyance effective as of April 6, 1984. *Id.* Consequently, the Trust's dispute, if any, regarding alleged damages for oil and gas drilling is not with the Debtors, but rather with Ashland Oil or other third parties.

---

1. Section 362(d) provides in relevant part:

 On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay

 . . . . .

 (1) for cause, including the lack of adequate protection of an interest in property of such party in interest....

 11 U.S.C. § 362(d).

2. Section 1141(d)(1) of the Code provides in relevant part as follows:

 Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—

(A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title ... whether or not—
 (i) a proof of the claim based on such debt is filed or deemed filed....
 (ii) such claim is allowed....

3. Bankruptcy Rule 3002(a) provides in relevant part as follows:
 (a) NECESSITY FOR FILING. An unsecured creditor or an equity security holder must file a proof of claim or interest in accordance with this rule for the claim or interest to be allowed....

Moreover, although the Trust asserts that its claim of title is not foreclosed by the Bar Order, it is clear that even if that were the case, no legitimate purpose would be served by permitting the *Rocke* Action to proceed at this time. The Debtors are proposing to convey title to Elkorn only to the extent of the interest which they possess and thus the Trust's alleged interest in the property is in no way prejudiced by a continuation of the stay pending consummation of the sale. It should be noted that since the Debtors have not requested this Court to quiet title against the Trust, the sale of property may take place without a determination of the Trust's claim of title. *See, In re Federal Shopping Way, Inc.*, 717 F.2d 1264 (9th Cir.1983). Furthermore, once the sale is consummated, the property in question will no longer be property of the estate subject to the stay. *See* 11 U.S.C. § 362(c)(1). At that time, the Trust may pursue whatever rights in that property it possesses without burdening the estate.

The Trust argues, however, that because the consummation of the sale has been delayed by the action now pending in the Court of Appeals for the Second Circuit[4], the Debtors' current interest in this property can be quickly adjudicated in the meantime. This Court disagrees. The Trust has not demonstrated that it would be prejudiced by awaiting the outcome of the Court of Appeals' action. In contrast, the estate would be unduly prejudiced at this juncture by the burden of perhaps needless litigation expenses which would inure to the Debtors.

Thus, based on the foregoing reasons, the Trust's cross-motion is hereby denied in all respects.

It is so Ordered.

---

4. As set forth previously, the Trust withdrew its objection to the sale. The pending appeal involves the Debtors and their Union with respect to implications of provisions of a collective bargaining agreement on the transaction. The appeal does not involve any issue or controversy between the Trust and the Debtors.