### In re the DREXEL BURNHAM LAMBERT GROUP, INC., et al., Debtors.

### James F. CHILDS, Jr., as Executor of the Estate of Norman Davidson, Jr., Deceased, Appellant,

### v.

### The DREXEL BURNHAM LAMBERT GROUP, et al., Appellees.

Nos. 90 Civ. 6954 (MP), 92 Civ. 5507 (MP). Bankruptcy No. 90 B 10421 (FGC).

United States District Court, S.D. New York.

Oct. 13, 1992.

Luskin & Stern (Michael Luskin, of counsel), New York City, for appellant.

Tenzer, Greenblatt, Fallon & Kaplan (Joel M. Leifer, of counsel), New York City, for appellees.

MILTON POLLACK, Senior District Judge:

Davidson was a customer of Drexel, who maintained a non-discretionary bond brokerage account there from September 1987 through approximately June 1989. In June 1989, when his account executive, Edward Buliavac moved from Drexel to Bear Stearns & Co., Davidson followed and transferred his Drexel account to Bear Stearns.

In the following year, on February 13, 1990, Drexel filed a petition under Chapter 11 for Bankruptcy Reorganization. In June 1990, the Bankruptcy Court set November 15, 1990 as the Bar Date for the filing of claims against the Drexel Estate. More than 15,000 claims were timely filed. Davidson died in September 1991 at the age of 76, from natural causes. In November 1991, his lawyer, James F. Childs, Jr., a partner at Jones, Day, Reaves & Pogue, qualified as Executor of Davidson's Estate.

The Jones, Day law firm was one of lead counsel in the Chapter 11 proceedings, having served from the inception of the Reorganization proceedings, as attorneys for a Fixed Creditors Committee.

By February 1992, Drexel's Chapter 11 proceedings were virtually resolved: a major settlement had been negotiated by the Fixed Creditors with the unliquidated contingent securities litigation claimants, a settlement agreement had been reached with Internal Revenue Service and a Plan of Reorganization had been promulgated and approved and was awaiting the consummation shortly thereafter. Just before the consummation on March 6, 1992, the Estate moved for leave to file a proof of damage claim against Drexel. The Estate claimed that the failure of Davidson to file a claim some 16 to 17 months earlier, was the result of "excusable neglect." A hearing was held on the motion on April 2, 1992, and an order denying the motion was made on April 16, 1992, based on a discretionary finding by the Bankruptcy Judge that the failure to file the claim timely was not the result of excusable neglect.

The Drexel Plan of Reorganization was consummated on April 30, 1992, at which time distribution of cash dividends payable to Creditors was commenced. Over $800 million was distributed on account within the next two months to the Creditors from Drexel's assets. Further distributions are under way in consummation of the Plan and will be made in due course.

All of the foregoing steps up to the actual distribution of the money were participated in and intensely negotiated by Jones, Day the Executor's law firm, among others, in their capacity as counsel for Fixed Creditors of Drexel. The above recitals are matters in the records of this Court of which judicial notice may properly be taken.

## Discussion

In the proceedings below, appellant had argued before Bankruptcy Judge Francis G. Conrad that an extension was warranted under the Bankruptcy Rules because Davidson's failure to timely file his proof of claim was due to the following circumstances constituting excusable neglect: (1) at no time prior to the Bar Date or prior to the time he ceased doing business with Drexel or prior to his death almost one year after the Bar Date did Davidson know or have reason to know that he had a churning claim against Drexel; (2) during the relevant period Davidson was suffering from chronic alcoholism and addiction to barbiturates; and (3) Davidson was under the undue influence of Buliavac, his account executive at Drexel.

On appeal the Estate presents two principle grounds for reversing the Bankruptcy Court: (1) the Bankruptcy Court erred as a matter of law in considering prejudice to the Debtor as an element of the excusable neglect standard among all the facts and circumstance in evidence; and (2) the Bankruptcy Court abused its discretion in ruling that Davidson's failure to file a timely proof of claim was not due to excusable neglect.

Bankruptcy Rule 3003(c)(3) provides in pertinent part, that:

> The court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed.

It is well established, and is not disputed by either party, that the "for cause" language of Rule 3003(c)(3) must be interpreted in accordance with Bankruptcy Rule 9006(b), which provides that:

> [W]hen an act is required ... within a specified period ..., the court for cause shown may at any time *in its discretion* ... (2) on motion made after expiration of the specified period permit the act to be done *where the failure to act was the result of excusable neglect.* (Emphasis added.)

Thus, the Bankruptcy Court has discretion to allow a movant to file a late proof of claim if the movant establishes that his failure to file was the result of excusable neglect. Requests for extensions of time are "strictly scrutinized" because of the importance of the Bar Date to administration of an Estate and reorganization of the bankrupt. *In re Drexel Lambert Group,*

*Inc. (Barclays Bank, PLC)*, 129 B.R. 22, 24 (Bankr.S.D.N.Y.1991). Since the determination of whether or not a case is an appropriate one in which to grant a request to file late is expressly left to the Bankruptcy Court's discretion, this Court may review the Bankruptcy Court' decision for abuse of discretion only. *See In re Hooker Investments, Inc.*, 122 B.R. 659 (S.D.N.Y. 1991), *appeal denied*, 937 F.2d 833 (2d Cir. 1991) ("this Court will review the actions of the bankruptcy judge under the abuse of discretion standard.")

■ The Estate argues that, in reaching its decision, the Bankruptcy Court adverted, among other things, to prejudice to the Debtor that might result from the late filing. The Bankruptcy Court stated that:

Counsel, as all have stated, the three factors for determining whether a late claim should be filed, first of all, it is the adequacy of the notice, the source of the delay, including the sophistication of the creditor and the prejudice that will inure to the debtor.

The Estate maintains that the test should consider only the conduct of the movant, and not also the effect the late filing would have on the Debtor. It points out that Bankruptcy Rule 9006(b) refers to the movant's failure to take action on time and the reason for that failure, and does not make any reference to consideration of the effect on the Debtor of a late filing. The Estate also cites an Eleventh Circuit case, *Biscayne 21 Condominium Association, Inc. v. South Atlantic Financial Corp. (In re South Atlantic Financial Corp.)*, 767 F.2d 814, 817 (11th Cir.1985), *cert. denied*, 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986), which relied on the statutory language in holding that prejudice to the Debtor should not be considered in determining excusable neglect.[1]

However, as an academic matter in the instant circumstances, it is well established that the test for excusable neglect in the Bankruptcy Courts in the Second Circuit includes prejudice to the Debtor. In *in re OPM Leasing Services, Inc.*, 48 B.R. 824 (S.D.N.Y.1985), Judge Keenan stated that:

Excusable neglect is present when a party fails to meet an obligation due to "unique or extraordinary" circumstances "which [are] beyond the reasonable control" of the delinquent party. The party seeking the extension has the burden in this regard. Three factors are considered in determining whether there is excusable neglect warranting relief: (i) the adequacy of the notice provided, (ii) the source of the delay, and (iii) the prejudice, if any, that will inure to the debtor should the objection be allowed.

*Id.* at 830–31. The same test is used in *In re L.F. Rothschild Holdings, Inc.*, No. 92 Civ. 1129, 1992 W.L. 200834, at *5 (S.D.N.Y. August 3, 1992); *In re Drexel Burnham Lambert Group, Inc.*, 129 B.R. 22, 25 (Bankr.S.D.N.Y.1991); *In re Nutri*Bevco, Inc.*, 117 B.R. 771, 785 (Bankr. S.D.N.Y.1990); *In re Chateaugay Corp.*, 104 B.R. 617, 619–20 (Bankr.S.D.N.Y.1989); *In re Sasson Jeans, Inc.*, 96 B.R. 457, 460 (Bankr.S.D.N.Y.1989); *In re Waterman S.S. Corp.*, 59 B.R. 724, 728 (Bankr. S.D.N.Y.1986); *In re Horvath*, 20 B.R. 962, 965–66 (Bankr.S.D.N.Y.1982); *Matter of Heyward*, 15 B.R. 629, 636 (Bankr. E.D.N.Y.1981).

The only case in this circuit failing to consider prejudice to the Debtor is *In re STN Enterprises*, 94 B.R. 329 (Bankr.D.Vt. 1988). In that case Bankruptcy Judge Conrad stated under circumstances there present that "we will not consider prejudice to the debtor as a factor in determining the existence of excusable neglect." *Id.* at 333. Three years later, in *In re Drexel Burnham Lambert Group, Inc.*, 129 B.R. 22, 25 (Bankr.S.D.N.Y.1991), cited above, Bankruptcy Judge Conrad considered prejudice as one of the elements in his analysis.

■ The proffered source of the delay did not spell out sufficient credible circumstances to constitute excusable neglect for

1. The only other circuit court case to consider the issue is *In re Pioneer Investment Services Co.*, 943 F.2d 673 (6th Cir.1991), *cert. granted*, —— U.S. ——, 112 S.Ct. 2963, 119 L.Ed.2d 585 (1992), which held that prejudice should be considered. As the citation indicates, the Supreme Court has granted *certiorari* in the case.

the failure to file timely. The record clearly supports this. The appellant seeks to latch on to a legal argument concerning prejudice that need not be reached here, albeit there was ample justification for a finding that in light of all the other facts and circumstances and the absence of any credible showing of Davidson's incompetence to manage his affairs and give attention to the commissions he had been charged it was plainly inappropriate and too late in the Reorganization proceedings to entertain this new claim on the eve of consummation of the Plan of Reorganization in the Chapter 11 proceedings.

█ Excusable neglect is found only when a party's failure to timely file is due to "unique or extraordinary" circumstances beyond the reasonable control of the delinquent party. *See In re L.F. Rothschild Holdings, Inc.,* No. 92 Civ. 1129, 1992 WL 200834 at *5 (S.D.N.Y. Aug. 3, 1992); *In re O.P.M. Leasing Services, Inc.,* 48 B.R. 824, 830 (S.D.N.Y.1985); *In re Chateaugay Corp.,* 104 B.R. 617, 619 (Bankr.S.D.N.Y. 1989). A bankruptcy court should "strictly scrutinize" a request for extension of the Bar Date. As Bankruptcy Judge Conrad stated:

> A claims bar date provides a mechanism by which a trustee in bankruptcy can estimate the potential liabilities of the debtor. Accordingly, a request for extension of the bar date should be strictly scrutinized because a fixed and known bar date is essential to the orderly administration and successful reorganization in a Chapter 11 case.

*In re Drexel,* 129 B.R. at 24. *In re Hooker Investments,* 122 B.R. at 664 ("The setting of a bar date is an important event in Chapter 11 cases. The bar order by forcing creditors to make known their claims against the estate, enables the bankruptcy judge to tally up the debtor's assets and liabilities so that a reorganization plan can be developed.").

As Bankruptcy Judge Conrad explained in *In re Drexel:*

> [A] grant of an extension of time to file a proof of claim will directly prejudice DBL's efforts to reorganize in a timely fashion and will adversely impact upon DBL's creditors. A claim filing bar date plays a critical role in the reorganization process of a Chapter 11 case. The bar date is not imposed simply to benefit the debtor by barring claims due to the passage of time. The bar date is imposed so that the bankruptcy case can be administered. Each creditor is required to file its proof of claim early in the bankruptcy case so that the trustee, the creditors, and the debtor can negotiate, formulate, and fund a plan of reorganization. Complex and exhaustive negotiations have been taking place. Absent finality, reorganization would be impossible.

*In re Drexel,* 129 B.R. at 26.

Drexel did not take issue with the Estate's theory of alcoholism as a disease, but rather claims that the Estate has failed to show that Davidson's sporadic and infrequent substance abuse and hospitalization in any way caused him to miss the Bar Date. Drexel points out that Davidson's only recorded hospitalizations in the period between the opening of his account at Drexel and the Bar Date were a few fairly brief visits, generally of one day or less in duration. There is no evidence that Davidson was rendered incompetent other than in a transitory way, or had ceased to read the newspaper or make telephone calls or attend to his vast business affairs during the period before or after the Bar Date. He continued to carry out his substantial business transactions and meet thereon with his accountant and lawyer during that period.

Appellant has failed to adduce any evidence that Davidson did not in fact know of the Drexel bankruptcy and of the pending Bar Date. On the contrary, Davidson' account executive, Buliavac testified that Davidson was aware of Drexel's bankruptcy and that they had discussed it together. (Affidavit of Buliavac at 2.) Appellant has fallen far short of adducing sufficient evidence to demonstrate that Davidson was incompetent to handle his affairs. Davidson's physical condition in the instant circumstances is thus no ground for finding clear error in the Bankruptcy Court's find-

ing that Davidson received sufficient notice. Buliavac's affidavit points out that he talked to Davidson every day. This is consistent with Davidson's having maintained adequate supervision of his accounts during their existence at Drexel. Indeed, Davidson was reaping about $300,000 a month in interest from the bonds purchased, according to counsel. *See e.g. Shaffer v. Williams*, 794 F.2d 1030, 1033 (5th Cir.1986).

The claim of the Estate was unsupported by any statement or affidavit from decedent's wife or any of decedent's employees, or anyone else who knew the decedent during his lifetime. Neither his accountant nor his lawyer tagged Davidson as incompetent mentally or otherwise. There is, in fact, no real issue about Davidson's competence, ability to understand, or ability to have filed a timely claim.

The order of the Bankruptcy Court is in all respects affirmed as a reasonable exercise of informed discretion.