**In re EAGLE–PICHER INDUSTRIES, INC., et al., Debtors.**

**Bankruptcy No. 1–91–00100.**

United States Bankruptcy Court, S.D. Ohio, Western Division.

Nov. 22, 1994.

Neil T. Leifer, Boston, MA.

Alan Kleinman, New York City.

Edmund J. Adams, Cincinnati, OH.

## DECISION RE OBJECTION TO CLAIM OF CITY OF NEW YORK, ETC.

BURTON PERLMAN, Bankruptcy Judge.

Debtor, Eagle–Picher Industries, Inc., filed objections to proof of claim # 165291 filed by the New York City Health and Hospitals Corporation; proof of claim # 165292 filed by the City of New York and its affiliated agencies, agents and entities; and proof of claim # 165293, filed by the New York City Housing Authority. Each of the claims is based on a complaint filed in the Supreme Court of New York, seeking relief from debtor as a manufacturer of lead pigments. An amended complaint dated September 3, 1993, accompanies each proof of claim. Debtor's objection is on the basis that the claims were filed late. A telephone pretrial conference on these objections was held at which time the debtor advised that it did not require an evidentiary hearing. Subsequent to the conference, counsel for claimants also informed the court that an evidentiary hearing was not required. The court will therefore decide the issue presented on the basis of the affidavits furnished by the parties.

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding arising under 28 U.S.C. § 157(b).

By order entered July 19, 1991, this court established a bar date for claims such as those here before the court, of October 31, 1991. The present claims were filed November 12, 1993, some two years later. Debtor has objected to the claims because of their late filing. Claimants respond that they were not given effective notice of the bar date or, in the alternative, that the failure to timely file claims was the result of excusable neglect which was not prejudicial to debtor.

Claimants contend on their respective proofs of claim forms that they have "never received any notices from the Bankruptcy Court in this case." Those statements anticipate the present controversy, and lead debtor to address this assertion in its objections to the claims. Debtor points out that claimants were included in its schedules as having a contingent disputed and unliquidated litigation claim. In support of its objections, debtor has supplied affidavits of Edmund J. Adams, Robert J. Janszen, and William D. Oeters, for the purpose of establishing that notice of bar date was sent to all parties listed in debtor's schedules. The "affidavit" of Edmund J. Adams offered by debtor is in fact a Certificate of Service, in which Adams certifies that based upon the information in the affidavits of Robert J. Janszen and William D. Oeters, service was made, inter alia, upon "those parties listed in the Statement of All Liabilities and Assets of Debtor," on August 8, 1991, by U.S. mail.

Janszen and Oeters each filed two affidavits, an original and a supplemental. Claimant has had an opportunity to respond to both. In his first affidavit, Janszen says that he is a vice president of Amity Unlimited, Inc., and that Amity "served copies of the Notice and Proof of Claim Forms upon all parties listed in the Proof of Claim Forms," on August 8, 1991. He says that his firm "received the Notice of General Claims Bar Date for Filing Proofs of Claim and Procedure Therefor (the "Notice"), and Preprinted Informational, General and Executory Contract/Unexpired Lease Proof of Claim Forms (the "Proof of Claim Forms")." Janszen's supplemental affidavit adds detail to the foregoing. That is, he says that after his firm received notices and pre-printed proof of claim forms, employees of his firm "placed each proof of claim, together with a copy of the Notice, into a windowed envelope so that each creditor's name and address as printed on the proof of claim form served as the mailing address for the envelope." He attests that such envelopes were then deposited in the mail.

In his initial affidavit, Oeters says that he is a certified public accountant employed by debtor as assistant to the controller. He

says that debtor filed a statement of all liabilities and assets of the debtor with the court. In addition, he says that the court entered an order establishing the pertinent general bar date. He then says that the notice of the bar date and preprinted proof of claim forms were delivered to Amity Unlimited, Inc., Janszen's firm, and that Janszen was instructed to serve notice and proof of claim forms on the parties listed on the preprinted forms. In his supplemental affidavit, Oeters adds that Price Waterhouse served as claims management consultants to debtor. Debtor, together with Price Waterhouse, created an informational data base known as the Claims Information System ("CIS"). The CIS was used to generate Schedule A3 of the debtor's schedules filed with the court. One of the creditors listed on the CIS is: "City of New York, Peter L. Zimroth, 100 Church Street, New York, NY 10007–2601." The CIS was also used to generate the names, addresses and proof of claim forms used to provide notice to creditors of the General Claims Bar Date. Oeters then says that the information on the CIS was copied onto a computer tape. Price Waterhouse verified that the computer tape accurately reflected the data on the CIS. The computer tape was then sent to Bowne Business Communications which used the tape to print the preprinted proof of claim forms. He says that there were multiple quality assurance checks which left him confident that each proof of claim form matched exactly the information on the schedules. The proof of claim forms were sent by Bowne to Amity Unlimited, Inc., for mailing. Oeters then says that debtor and Price Waterhouse recorded on the CIS any and all mail returns. Finally, he says that: "The CIS reflects a proof of claim form and a copy of the Notice were sent to the City in August, 1991, at the address set forth above; that it was not returned as undeliverable; and that there have been no changes to that record since the mailing in August, 1991."

For their part, claimants rely upon the affidavit of Alan H. Kleinman, who says that he is an attorney in the office of Paul A. Crotty, the Corporation Counsel of the City of New York, and that he is the lead attorney for plaintiffs in the several cases pending in the courts of the State of New York against debtor. While Mr. Kleinman has much else to say in his affidavit of an argumentative nature, the basic fact for which the affidavit is offered is to provide evidentiary support to the position that claimants never received actual notice of the bar date. That is, Kleinman says that he was never served with a copy of the order establishing the bar date. He says that the first time that he learned that there was a bar date for non-asbestos claims was when an associate called the bankruptcy court to ascertain the status of the bankruptcy, on October 26, 1993. In that call, Kleinman says, claimants learned that there was a bar date and promptly filed proofs of claim. Kleinman further says that not only did he not receive notice of the bar date, but he says that "no notice was otherwise received by the Office of the Corporation Counsel." He says that that office has a strict procedure for mail not addressed to a particular attorney, and through the normal workings of that procedure, he would have been the one to whom such notice would have been directed.

■ He also stated that the exhibits furnished by debtor indicate that the mailing address which was used was "Peter L. Zimroth, Esq., 100 Church Street, New York, New York, 10007." He then says that Zimroth had, by August, 1991, not been the city's Corporation Counsel for more than one and a half years. The court notes that the State of New York complaint filed in 1989 prepetition on the present claims shows that it was filed by Peter L. Zimroth, Corporation Counsel of the City of New York. That Zimroth may have been succeeded by another in his official capacity cannot make invalid a notice sent in his name to the correct address.

■ The affidavits of debtor make a sufficient showing, and we find as a fact, that notice of bar date was mailed to the present claimant. Despite the criticisms of claimant, debtor's affidavits show that a careful course of procedure for noticing creditors of bar date was put in place by debtor, and faithfully adhered to. That debtor cannot produce a copy of the actual notice sent to the present claimant is without moment, for that sort of

corroboration would unnecessarily multiply the already swollen files of this debtor. The meticulous course adopted by debtor for its notice procedures is adequate to support its assertion that notice was sent to this creditor. That course included as well procedure for recording return of mail. None addressed to these claimants was returned. Where the evidence is sufficient to establish that notice was mailed, a presumption arises that it was received. *In re The Yoder Co.,* 758 F.2d 1114, 1118 (6th Cir.1985). Such a presumption, after due consideration of the evidence before the court, arises here. Of course, a presumption may be rebutted.

Here claimants rely upon the affidavit of Alan H. Kleinman for that purpose. The contents of the Kleinman affidavit are detailed above at pp. 945 and 946. We have reached the conclusion that the Kleinman affidavit is insufficient to overcome the presumption. All that that affidavit establishes is, first, that the affiant did not receive notice, and, second, to his knowledge, a system was in place which should have seen that notice reached him if it was received. As to the first point, that Kleinman did not receive notice, the law is clear that mere denial of receipt of notice is insufficient to rebut the presumption that notice was sent. The law is well summarized in *In re Schepps Food Stores, Inc.,* 152 B.R. 136, 139–40 (Bankr. S.D.Tex.1993):

> Most bankruptcy cases hold that the mere denial of receipt is insufficient to rebut the presumption that proper notice was given. However, denial of receipt does raise a question of fact. *See In re Bucknum,* 951 F.2d [204] at 206–07 [ (9th Cir.1991) ] (an affidavit denying receipt does not rebut the common law presumption); *In re Longardner,* 855 F.2d [455] at 459 [ (7th Cir.1988) ] (denial of receipt alone does not rebut the common law presumption, it merely raises a question of fact); *In re Treister,* 38 B.R. [228] at 230 [ (Bkrtcy.S.D.N.Y.1984) ] (a naked assertion of nonreceipt is insufficient to rebut the presumption under Bankruptcy Rule 9006(e)). *Cf. Beck [v. Somerset Technologies, Inc.],* 882 F.2d [993] at 996 [ (5th Cir.1989) ] (the common law presumption is not rebutted by an employee's testimony

that he did not remember receiving the letter and that he did not remember whether the person who signed for it was an employee). This rule is based on practicality, rather than on equity. If denial of receipt alone could rebut the presumption that notice was given, then " 'the scheme of deadlines and bar dates under the Bankruptcy Code would come unraveled.' " *See In re Bucknum,* 951 F.2d at 206–07 (quoting *Osborn v. Ricketts (In re Ricketts),* 80 B.R. [495] 496, 497 (9th Cir. BAP 1987)).

As to Kleinman's second point, we find his affidavit inadequate to establish that there was in place in the Office of the Corporation Counsel of the City of New York, a system which would assure that the notice in question would necessarily come to his attention. Entirely absent is affidavit evidence by the person or persons who had the responsibility for seeing to the operation of that system. Only evidence from such a source is competent for an examination of claimants' procedures and how they actually were implemented.

In view of our conclusion that the presumption of notice of the bar date was sent to claimants, and that claimants have not successfully rebutted that presumption, claimants are left with the necessity of establishing that they should be allowed to file their claims late on grounds of excusable neglect.

Pursuant to F.R.B.P. 3003(c), July 19, 1991, was established as the bar date for claims such as those asserted by claimants. Because we are involved with a dispute about whether to allow claimants to file their claims out of time, F.R.B.P. 9006(b)(1), which deals with enlargement of a time limit, comes into play. That rule provides that where extension of the time limit is sought after its expiration, the parties seeking relief must show excusable neglect. Excusable neglect in a bankruptcy claim context was the subject of *Pioneer Investment Serv. Co. v. Brunswick Assoc.,* —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). While that case fundamentally differs from that before us in that in *Pioneer* there was no question that the notice of bar date was received by the

claimant, this essential fact is disputed by claimants here, though we have resolved it against them. In *Pioneer* at ——, 113 S.Ct. at 1498, the court said:

Because Congress has provided no other guideposts for determining what sorts of neglect will be considered "excusable", we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include, as the Court of Appeals found, the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. *See [In re Pioneer Investment Services Co.,]* 943 F.2d [673] at 677 [ (6th Cir.1991) ].

■ We look then to the factors enumerated by the Supreme Court in *Pioneer.* Particularly, we find that two factors dominate and work against these claimants. First, a delay of more than two years after the expiration of a bar date is excessive. Kleinman has known of the present bankruptcy, according to his affidavit, since January 21, 1991. That means that claimants, for a period of close to three years, did nothing in regard to filing the present claims. In his affidavit, Kleinman says that the present claims finally were filed after an associate called the clerk's office of this bankruptcy court on October 26, 1993, "to ascertain the status of the bankruptcy." We are not informed why that call was made and, particularly, no reason is suggested why that call could not have been made sooner. The affidavit statement does not enable the court to ascertain the reason for the delay. Such an extended period of inaction after having knowledge of the bankruptcy filing disables a party from justifying a late filing.

Moreover, the affiant says in his affidavit that he was able to file timely asbestos claims in the case on behalf of his client, because outside counsel advised him of the asbestos claims bar date. He says that he did not receive that information from debtor. The asbestos claims bar date was September 30, 1992. This means that by September 30, 1992, claimants knew that there was a pending bankruptcy, and knew further, if affiant's statement is accepted, that claimants were not receiving notices from the debtor. At that point, reasonable prudence required of claimants that they inform debtors and/or the court that they were not receiving notices, and that notices should be sent to them. Not having done so, claimants fail the test of *Pioneer,* that one arguing excusable neglect because of delay must demonstrate that delay was not "within the reasonable control of movant."

Claimants cite *City of New York v. New York, N.H. & H.R. Co.,* 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953), for the proposition that the claimant in that case had no duty to inquire as to the existence of a bar date. That case, decided under the 1898 Bankruptcy Act, differs from the present in that it was not there established that notice to claimant had been sent. In addition, entirely apart from the question of receipt of notice, the evidence shows that the claimants in the case before us were sufficiently aware of events in the bankruptcy case to have timely filed numerous other proofs of claim. Under those circumstances, claimants cannot remain inactive for years without losing their right to file claims.

The other *Pioneer* factor which works against claimants is the very extensive period of the delay. This is indeed prejudicial to debtor. The claims in issue aggregate $150 million. The several constituencies in this bankruptcy case, debtor, asbestos claimants through their committee, other unsecured creditors through their committee, have been engaged in intense activity in regard to the development of a plan in the consolidated cases. Very significant progress has already been made, and further negotiation continues. In these cases, valuation of claims, as well as assets, plays a vital role, and a significant change in valuation will, to say the least, have an unsettling effect on the negotiations. *See In re Drexel Burnham Lambert Group, Inc.,* 146 B.R. 84, 88 (S.D.N.Y.1993).

It is therefore the conclusion of this court that the three claims here in issue which were filed late must be disallowed.