**In re NUTRI*BEVCO, INC., Debtor.**

**Bankruptcy No. 88–30264.**

United States Bankruptcy Court,
S.D. New York.

March 30, 1990.

McCarter, Pisarri, Mulligan & Careri by William F. McEnroe, and Frank Careri, Jr., of counsel, Hackensack, N.J., for Kurt and Marie Winner and Marion Bopp.

Jeffrey L. Sapir and Jody Kava, of counsel, Hartsdale, N.Y., for debtor.

Shaw, Licitra, Esernio & Schwartz, P.C. by Jeffrey M. Zalkin, of counsel, Garden City, N.Y., for Creditors' Committee.

Neil R. Lubarsky, White Plains, N.Y., for Equity Sec. Holders' Committee.

## DECISION ON MOTION TO DEEM LATE CLAIMS TIMELY FILED

JEREMIAH E. BERK, Bankruptcy Judge.

This is a joint motion filed April 25, 1989 by Marion Bopp, Kurt Winner and Marie Winner ("movants") seeking to have their late filed proofs of claim deemed timely filed. Marion Bopp filed an unsecured

claim on April 21, 1989 in the amount of $76,000.00 (claim # 186). Kurt Winner and Marie Winner filed a joint unsecured claim on April 21, 1989 in the amount of $160,000.00 (claim # 187). The last date (the "bar date") for filing proofs of claim in this case was April 18, 1989.

Movants assert five arguments in support of their motion. First, movants contend they were deprived of due process because they did not receive timely and meaningful notice of the bar date. Second, the movants assert that the claims should be deemed timely filed under the "excusable neglect" standard of B.R. 9006(b)(1). Third, they argue that they are entitled to an extension of time to file their claims for "cause shown" pursuant to B.R. 3003(c)(3). Fourth, the movants state that the debtor's purported failure to adhere to certain fiduciary and ethical obligations requires the remedial application of Fed.R.Civ.P. 60(b)(3). Fifth, movants allege that they timely filed informal proofs of claim.

Hearings were held on May 9, 1989 and May 11, 1989 at which testimonial and documentary proof were adduced. After renewed settlement attempts failed, the matter was submitted for determination. For the reasons stated below, we find that movants failed to sustain their arguments to allow their claims to be deemed timely filed and, accordingly, their motion is denied.

## I. FINDINGS OF FACTS

On April 29, 1988, the debtor, a publicly held corporation, filed for relief under Chapter 11 of the Bankruptcy Code. Movants' claims were scheduled as "disputed" and "unliquidated". The debtor has remained a debtor in possession pursuant to Section 1107 of the Bankruptcy Code ("Code"), 11 U.S.C. § 1107. Official Committees of Unsecured Creditors and Equity Security Holders were appointed and are represented by counsel.

Prior to the debtor's seeking bankruptcy relief, movants commenced an action on May 20, 1987 in the United States District Court for the District of New Jersey against the debtor and certain other parties. The complaint alleged various violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq. as well as the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78a et seq. This litigation was stayed upon the filing of the debtor's Chapter 11 case.

Counsel representing the movants as plaintiffs in the New Jersey federal litigation continued to represent them after the debtor filed for bankruptcy. They prepared and filed the proofs of claim at issue and appear as attorneys of record for movants herein. Two of movants' attorneys from the firm of McCarter, Pisarri, Mulligan & Careri, Esqs. testified concerning their actions and awareness of the pendency of the debtor's bankruptcy case.

One of movants' attorneys, Frank Careri, Jr., testified that he first became aware of debtor's bankruptcy when he received telephonic notice of the filing "just as the petition was filed." Tr. at 15 (May 11, 1989). In addition, Careri recalled that two weeks later he obtained a copy of the Chapter 11 petition by telephonic facsimile from the attorney representing the debtor in the New Jersey federal action. Id. In fact, as a result of the debtor's pending Chapter 11 case, Careri subsequently agreed with counsel representing the debtor in the New Jersey federal action that the litigation should be "administratively closed" pending the "termination of any proceedings concerning [movants'] claims which may be brought in the bankruptcy" unless it was reactivated by a party to that action. Movants' Exhibit 1; Tr. at 16–17 (May 11, 1989). Additionally, counsel for parties in the New Jersey action conferred on a periodic basis during the pendency of the debtor's bankruptcy case. Movants' Brief in Support of Motion for Leave to File Proofs of Claim Out of Time ("Movants' Brief") at 2–3; Tr. at 26–27 (May 11, 1989).

Notwithstanding their knowledge of the bankruptcy filing, movants' attorneys neither checked the debtor's schedules to determine if their clients' claims were properly listed, nor filed a notice of appearance or request for notices in the bankruptcy case. Tr. at 82–84, 88 (May 11, 1989). Instead,

Careri advised his client, Kurt Winner,[1] to forward all notices concerning the bankruptcy case to Careri. *Id.* at 89–90.

Apparently, this advice was not heeded. Although Kurt Winner testified that he received several mailings in connection with the bankruptcy case, he did not forward any of them to his attorneys prior to the claims bar date. *Id.* at 53. Among the mailings he admitted receiving were the following. First, at some point in "mid 1988," Winner received the "Order for Meeting of Creditors, Combined With Notice Thereof and of Automatic Stay" ("§ 341 Notice"). Movants' Exhibit 6; Tr. at 45 (May 11, 1989). Second, in late December of 1988, Winner received the Amended Order and Notice of Hearing on Disclosure Statement ("Disclosure Statement Notice"). Movants' Exhibit 7; Tr. at 47 (May 11, 1989). The substance and significance of each of these documents are later discussed.

Movants' counsel, however, testified that the first time they saw the § 341 Notice was on May 11, 1989, the second day of the hearing commenced on the instant motion. Tr. at 86–87 (May 11, 1989). The § 341 Notice received by Kurt Winner contained the following statement:

> The debtor (or trustee) has filed or will file a list of creditors and equity security holders pursuant to Rule 1007. Any creditor holding a listed claim which is not listed as disputed, contingent, or unliquidated as to amount, may, but need not file a proof of claim in this case. *Creditors whose claims are not listed or whose claims are listed as disputed, contingent, or unliquidated as to amount and who desire to participate in the case or share in any distribution must file their proofs of claim on or before the last day fixed for filing a proof of claim. Any creditor who desires to rely on the list has the responsibility for determining that he is accurately listed.* Movants' Exhibit 6 (emphasis added).

This statement follows the wording of Official Bankruptcy Form 16 as prescribed by the Judicial Conference of the United States pursuant to B.R. 9009. In addition, the § 341 Notice received by movants bore the following supplemental statement required for all Chapter 11 cases within the jurisdiction of the Poughkeepsie Bankruptcy Court: "A CLAIM MAY BE FILED AT ANY TIME PRIOR TO THE APPROVAL OF THE DISCLOSURE STATEMENT UNLESS A DIFFERENT TIME IS FIXED BY THE COURT ON NOTICE AS PROVIDED IN RULE 2002." *Id.* (original emphasis).

On November 1, 1988, the debtor filed its first disclosure statement and plan and an order for hearing on the disclosure statement pursuant to Code § 1125(b) was entered that date, setting December 14, 1988 as the hearing date. Subsequently, an amended order was entered on December 12, 1988 which set the disclosure statement hearing for January 19, 1989. Notice of this hearing, Movants' Exhibit 7, was received by Kurt Winner late in December of 1988. Tr. at 47 (May 11, 1989). Pursuant to the Disclosure Statement Notice, Winner wrote to debtor's attorney on December 28, 1988 to request a copy of the disclosure statement which he thereafter received. Tr. at 48–49, 59 (May 11, 1989).

After several hearings on the disclosure statement and its amended versions, a revised version of the disclosure statement was approved pursuant to an order entered on March 24, 1989. An amended order approving the disclosure statement was entered March 27, 1989.

Ordinarily, either March 24 or March 27, 1989 would have been the last day to file timely proofs of claim, as fixed by the § 341 Notice issued in this case. In an apparent excess of caution, the debtor sought and obtained an order entered March 3, 1989 extending the claims bar date to April 3, 1989. Due to unrelated circumstances, an order further extending the bar date was entered March 21, 1989

---

1. The record contains no evidence concerning that part of the motion as pertains to Marion Bopp's proof of claim. Although Marion Bopp is Marie Winner's aunt, movants' attorneys' communications at all times relevant hereto appear to have been solely with Kurt Winner. Tr. at 17, 43 (May 11, 1989).

setting April 18, 1989 as the last date by which proofs of claim were to be filed ("Claims Bar Order"). Movants' Exhibit 5. The Claims Bar Order provided in pertinent part:

1. All claims, as defined in 11 U.S.C. Section 101(4), of any creditor that holds or believes that it holds any claims against the estate of the Debtor based on the Debtor's primary or secondary, direct or indirect, secured or unsecured, contingent or guaranty liability, or otherwise, other than those claims specifically excepted by this Claims Bar Order, shall be filed with this Court, in writing, together with supporting documentation, substantially conforming with official Bankruptcy Form, on or before *April 18, 1989* (the "Bar Date"), at the office of the Bankruptcy Court Clerk, 176 Church Street, Post Office Box 1000, Poughkeepsie, New York 12602–1000.

2. Any claim required to be filed pursuant to the provisions of this Claims Bar Order and not filed on or before the Bar Date shall be *forever barred* from assertion against the Debtor and its property and the holder of such claim shall be barred from voting or participating in any distribution in this case.

3. The following are excepted from the provisions of this Claims Bar Order and are *not* required to be filed on or before the Bar Date:

a. Claims heretofore properly filed in these proceedings.

b. Claims listed in the Schedules of the debtor, or in any supplements or amendments thereto, filed before the date of entry of this Order ("Schedules"), if such claim is not designated therein as "contingent", "unliquidated" or "disputed".

c. Claims for administrative expenses.

d. Interests of the holders of common stock in the Debtor in respect of their equity interest.

Movants' Exhibit 5 (original emphasis).

Pursuant to the terms of this Order, the debtor was directed to give notice of the claims bar date to all creditors and parties in interest "immediately" by mail and to publish a copy of the Order in two news publications of nationwide circulation. *Id.* The movants do not dispute that the debtor complied with these directions. Tr. at 94–95 (May 11, 1989). The debtor, in fact, included a copy of the Claims Bar Order in a mailing which also contained the amended order approving the debtor's disclosure statement and plan, along with two motions seeking relief under Code §§ 364 and 365.

This mailing was received by Mr. Winner as well, and constituted the third such notice he acquired concerning the claims bar date. He testified that he did not physically receive the mailing containing the Claims Bar Order until April 19, 1989, one day after the bar date had passed. Tr. at 50 (May 11, 1989). He explained that the reason for the delay in receiving this mailing was that on January 17, 1989, he left with his wife for vacation in Hawaii and did not return until April 19. *Id.* at 49–50. Before leaving for Hawaii, he instructed his stepson to forward mail that he variously described as "mail that was pertinent to bills and such", *id.* at 50, and "bills and important mail", *id.* at 62, but not to send "junk mail" or "junk packages", *id.* at 61–62. Movants attempted to show that the envelope containing the Claims Bar Order appeared to belong to the latter category of mail and thus was not forwarded to Mr. Winner in Hawaii. *Id.* at 60–65; Movants' Exhibit 8.

On April 18, 1989, which coincidentally was the claims bar date, Winner's attorneys learned from a contact in the pending New Jersey federal civil litigation that an important mailing to creditors had been made in connection with the Chapter 11 bankruptcy case that could affect their clients' interests. Tr. at 31–32 (May 11, 1989). The contact, however, would not divulge what the mailing actually contained. *Id.* at 66. Careri left a message on that same date on Winner's telephone answering machine asking Mr. Winner to call him immediately upon his return. *Id.* at 32–33. Thereafter, Careri consulted with his partner, William McEnroe, the firm's

bankruptcy specialist, with regard to his concerns. *Id.* at 32, 65–66.

McEnroe testified that he telephoned the bankruptcy clerk's office at Poughkeepsie on the morning of April 18, for information about the mailing and was referred to debtor's attorney, Jeffrey Sapir. *Id.* at 66. McEnroe then attempted to reach Sapir by phone and spoke instead with Sapir's associate, Jody Kava. McEnroe testified that he asked Kava if "a mailing had gone out and what was the nature of the mailing." *Id.* at 68. Kava informed McEnroe that a mailing was sent and noted that the disclosure statement and order approving the disclosure statement had been mailed. She said that she would forward a copy of the mailing to McEnroe. Kava did not, however, state that the mailing included the Claims Bar Order or that the bar date was in fact that very day. *Id.* On the other hand, McEnroe did not ask during this telephone conversation if a claims bar date had been fixed. *Id.* at 77–78. McEnroe received the mailing from Kava on April 20, 1989. *Id.* at 63–69.

Upon returning from vacation on April 19, 1989, Mr. Winner checked the messages on his answering machine and telephoned his attorneys late that afternoon. *Id.* at 33. Careri asked him if he had received any mail concerning the Nutri*Bevco bankruptcy. He acknowledged that he had, and on the following morning, Mr. Winner delivered the mailing containing the Claims Bar Order to Careri's office. *Id.* Movants' attorneys immediately prepared two proofs of claim, one for Marion Bopp and the other for Kurt and Marie Winner. Both were then sent by overnight express mail and received by the clerk's office at Poughkeepsie on April 21, 1989.

## II. DISCUSSION

### A. Due Process

Movants argue that their constitutional right to due process in this case was violated in two respects. First, they claim that

their failure to receive actual timely notice of the bar date for filing proofs of claim deprived them of their procedural due process right to adequate notice. Second, movants assert that although they had some general knowledge of the pendency of the debtor's bankruptcy proceedings, their lack of notification that their claim had been scheduled as disputed violated their right to due process. In this regard, movants challenge the constitutionality of B.R. 3003(c), the procedural rule for filing claims in Chapter 11 cases. These two constitutional infirmities, movants contend, warrant that their proofs of claim be deemed timely filed.[2]

### 1. Due Process and Actual Receipt of Notice

■ Although movants do not specify the constitutional predicate of their due process claims, it appears that the authority is the Fifth Amendment as the due process "commands of the Fourteenth Amendment are addressed only to the State or to those acting under color of its authority" and do not apply to merely private conduct or to those of the federal government as appear to be involved in our case. *District of Columbia v. Carter*, 409 U.S. 418, 423–24, 93 S.Ct. 602, 605–06, 34 L.Ed.2d 613 (1973).

The Fifth Amendment mandates that no person shall be deprived of property "without due process of law." Whereas "[m]any controversies have raged about the cryptic and abstract words of the Due Process Clause," the Supreme Court observes that "there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

■ The property rights here at issue are movants' entitlement to participate in

---

**2.** We note that Southern District of New York Local Bankruptcy Rule 15 requires a party to notify the court in writing of the existence of a constitutional infirmity in an Act of Congress to enable the court to comply with 28 U.S.C. § 2403. As we uphold the constitutionality of B.R. 3003(c), the parties' noncompliance with this provision is overlooked.

the distribution scheme contemplated by the debtor's plan of reorganization. Code § 1111(a) provides that a proof of claim is deemed filed in a Chapter 11 case if the claim is scheduled pursuant to Code § 521(1) and is not listed as being either disputed, contingent or unliquidated. On the other hand, any creditor whose claim is not scheduled, or whose claim is scheduled as disputed, contingent, or unliquidated, must file a proof of claim within the pre-scribed time. B.R. 3003(c)(2). One who fails to file a timely proof of claim "shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution." *Id.* Thus, holders of dis-puted and unliquidated claims, such as the movants, who fail to file timely proofs of claim are not deemed to have allowed claims against the Chapter 11 estate, and consequently are not entitled to receive a distribution under the reorganization plan. Code § 502(a), B.R. 3003(c)(2). Such claims are discharged upon confirmation and are no longer obligations of the debtor. Code § 1141(d)(1)(A).

■■■ The due process considerations of the Fifth Amendment are given great weight and "take precedence over the dis-charge provisions of section 1141 of the Bankruptcy Code, in cases where the debt-or has knowledge of claims and fails to inform claimants of the pendency of the proceedings." *Broomall Industries v. Data Design Logic Systems*, 786 F.2d 401, 403 (Fed.Cir.1986). Even where a creditor is aware of the pendency of the bankruptcy case, courts have held that the debtor is obligated to give formal actual notice to the creditor where the creditor is known to the debtor. *City of New York v. New York, New Haven & Hartford Railroad Co.*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953); *In re Spring Valley Farms, Inc.*, 863 F.2d 832 (11th Cir.1989); *Reliable Elec-tric Co. v. Olson Construction Co.*, 726 F.2d 620 (10th Cir.1984); *In re Intaco Puerto Rico, Inc.*, 494 F.2d 94 (1st Cir. 1974); *In re Harbor Tank Storage Co.*, 385 F.2d 111 (3d Cir.1967); *In re Middle Plan-tation of Williamsburg, Inc.*, 48 B.R. 789 (E.D.Va.1985); *In re Standard Metals Corp.*, 48 B.R. 778 (D.Colo.1985), *aff'd on other grounds*, 817 F.2d 625 (10th Cir. 1987), *cert. dismissed*, 488 U.S. 881, 109 S.Ct. 201, 102 L.Ed.2d 171 (1988); *In re Moskowitz*, 35 B.R. 750 (S.D.N.Y.1983); *In re Heater Corp. of the Americas, Inc.*, 97 B.R. 657 (Bankr.S.D.Fla.1989).

*City of New York v. New York, New Haven & Hartford Railroad Co.*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953), for example, concerned a railroad reorganiza-tion case in which the court issued a claims bar date order. The debtor was required to mail copies of the order to all creditors who had appeared in the case. Publication of the order was also required. The City of New York was a known creditor of the debtor and was aware of the pendency of the debtor's bankruptcy case. It neverthe-less failed to file a timely proof of claim. The City claimed that this failure occurred because it had not received actual notice of the claims filing bar date. The Supreme Court held that notwithstanding the credi-tor's actual knowledge of the bankruptcy case it was not bound by the claims bar order. The Court explained:

Nor can the bar order against New York be sustained because of the city's knowledge that reorganization of the railroad was taking place in the court. The argument is that such knowledge puts a duty on creditors to inquire for themselves about possible court orders limiting the time for filing claims. But even creditors who have knowledge of a reorganization have a right to assume that the statutory "reasonable notice" will be given them before their claims are forever barred. When the judge or-dered notice by mail to be given the appearing creditors, New York City act-ed reasonably in waiting to receive the same treatment.

The statutory command for notice em-bodies a basic principle of justice—that a reasonable opportunity to be heard must precede judicial denial of a party's claimed rights. New York City has not been accorded that kind of notice. *Id.* at 297, 73 S.Ct. at 301.

The Court held that where the debtor is aware of the creditor, the creditor is enti-

tled to actual notice of the bankruptcy proceedings and the order setting the claims filing bar date.

Due process concerns the adequacy of the notice as well. "A creditor's claim can be barred for untimeliness only upon a showing that it received reasonable notice." *Matter of Robintech, Inc.*, 863 F.2d 393, 396 (5th Cir.1989), *cert. denied sub nom. Bullock v. Oppenheim, Appel, Dixon & Co.*, —— U.S. ——, 110 S.Ct. 55, 107 L.Ed.2d 24 (1989). Whether a creditor has received reasonable notice "depends upon the circumstances of the particular case." *Wright v. Placid Oil Co.*, 107 B.R. 104, 107 (N.D.Tex.1989); *In re Standard Metals Corp.*, 48 B.R. at 787 ("the amount of notice which is necessary is dependent upon the facts and circumstances of each particular case"). The Supreme Court, to this end, offers this guidance:

An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied. "The criterion is not the possibility of conceivable injury but the just and reasonable character of the requirements, having reference to the subject with which the statute deals."

But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes.

*Mullane v. Central Hanover Bank & Trust Co.*, 339 at 314–15, 70 S.Ct. at 657–58 (citations omitted) (quoting *American Land Co. v. Zeiss*, 219 U.S. 47, 67, 31 S.Ct. 200, 207, 55 L.Ed. 82 (1911)).

In our case, movants do not dispute that they were properly scheduled or that they received notice. Specifically, movants acknowledge that they received the § 341 Notice which informed them of the need to verify how their claims were scheduled as well as of the fact that claims could be filed up to the date of the approval of a disclosure statement, unless otherwise ordered by the court. Tr. at 45 (May 11, 1989). They also received the Disclosure Statement Notice. *Id.* at 47. Theoretically, if debtor's disclosure statement had been approved on the first date set for its hearing, January 19, 1989, this date would have constituted the claims bar date in accordance with the § 341 Notice. As it turned out, however, the debtor's disclosure statement was not approved until March 24. In addition, and again to the movants' benefit, the debtor sought claims bar orders which *further* extended this bar date initially to April 3, 1989 and, by an amended order, then to April 18, 1989. Movants do not dispute that they received actual notice of the April 18 bar date by mail. They also acknowledge that the claims Bar Order was timely published.

The only reason they assert for late receipt of this last mailing is that Kurt Winner was on vacation. Movants therefore claim that they did not receive actual notice of the bar date and thus should not be held to the claims filing bar. They argue that this constitutes a failure to receive "actual" notice which is violative of their due process rights.

Movants' interpretation of the term "actual" lacks legal support. Had the debtor sought to notify movants of the impending bar date by publication alone, the adequacy of the notice would be susceptible to attack on due process grounds. "It would be idle to pretend" the Supreme Court has ob-

served, "that publication alone ... is a reliable means of acquainting interested parties of the fact that their rights are before the courts." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. at 315, 70 S.Ct. at 658; *City of New York v. New York, New Haven & Hartford Railroad Co.*, 344 U.S. at 296, 73 S.Ct. at 301 ("Notice by publication is a poor and sometimes a hopeless substitute for actual service of notice."); *In re Computer Devices, Inc.*, 51 B.R. 471, 476 (Bankr.D.Mass.1985). As one court explained:

> The requirements of adequate notice differ with respect to known creditors and unknown creditors. *Sheftelman v. Standard Metals Corp.*, 839 F.2d 1383, 1386 (10th Cir.1987). Actual notice must be given to known creditors, and constructive notice must be given to unknown creditors. *Wright v. Placid Oil Co.*, 107 B.R. at 108.

On the other hand, the Supreme Court "has not hesitated to approve of resort to publication as a customary substitute ... where it is not reasonably possible or practicable to give more adequate warning." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. at 317, 70 S.Ct. at 658; *In re O.P.M. Leasing Services, Inc.*, 48 B.R. 824, 831 (S.D.N.Y.1985) ("notice by publication is an adequate form of notice to advise a party of the entry of a [claims] bar order").

In our case, on *three* separate occasions movants received actual notice by mail of the pendency of a claims bar date. The § 341 Notice clearly stated that proofs of claim could be filed "at any time prior to the approval of the disclosure statement." Movants' Exhibit 6. The Disclosure Statement Notice constituted further notification of a potentially imminent claims bar date when read in conjunction with the § 341 Notice. Movants' Exhibit 7. Finally, the Claims Bar Order, entered March 21, 1989, which the debtor mailed to movants provided that "[a]ny claim ... not filed on or before the Bar Date shall be *forever barred* from assertion against the Debtor and its property and the holder of such claim shall be barred from voting or participating in any distribution in this case." Movants' Exhibit 5 (original emphasis).

■ B.R. 2002(a)(8) mandates that the 20–day notice of the time fixed for filing claims pursuant to B.R. 3003(c) "shall" be given "by mail." Movants do not dispute that the debtor fully complied with this rule. Personal service of the claims bar notice is neither required nor permitted. Nevertheless, movants argue that notwithstanding their receipt of the notice by mail, their failure to receive it prior to the bar date deprived them of actual notice. In essence, therefore, movants appear to claim that nothing less than personal service would satisfy their view of due process. Yet, B.R. 2002(a)(8) only mandates that there be 20 days notice *"by mail."* Furthermore, all that is required is that "within the limits of practicability notice must be such as is reasonably calculated to reach interested parties." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. at 318, 70 S.Ct. at 659. Thus, in *Mullane*, the Supreme Court held that notice "by ordinary mail to the record addresses" satisfies the requirements of due process, and concluded that "the mails today are recognized as an efficient and inexpensive means of communication." *Id.* at 318–19, 70 S.Ct. at 659. Indeed as the Second Circuit has noted, the Supreme Court has "repeatedly held that notice by first-class mail is sufficient, notwithstanding the Court's obvious awareness that not every first-class letter is received by the addressee." *Weigner v. City of New York*, 852 F.2d 646, 651 (2d Cir.1988), *cert. denied,* 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 777 (1989). The court in *Weigner* continued, "In the context of a wide variety of proceedings that threaten to deprive individuals of their property interests, the Supreme Court has consistently held that mailed notice satisfies the requirements of due process." *Id.* at 650; *see, e.g., Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988) (notice to creditors in probate proceedings); *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 799–800, 103 S.Ct. 2706, 2711–12, 77 L.Ed.2d 180 (1983) (notice to mortgagee of tax foreclosure); *Greene v. Lind-*

*sey*, 456 U.S. 444, 455, 102 S.Ct. 1874, 1880, 72 L.Ed.2d 249 (1982) (notice of forcible entry and detainer actions); *Schroeder v. City of New York*, 371 U.S. 208, 214, 83 S.Ct. 279, 283, 9 L.Ed.2d 255 (1962) (notice of condemnation proceedings). The Second Circuit also observed that even though "the mails are not one hundred percent reliable," it noted that the Supreme Court does not require "actual receipt of notice that is properly mailed." *Weigner v. City of New York*, 852 F.2d at 650.

▮ How can we require more of this debtor than compliance with the appropriate rules which only require notice by mail? Indeed, the Seventh Circuit has held that the mere mailing of a proof of claim form to a creditor may constitute "actual notice" of the need to file claims in a bankruptcy case. *Matter of Chicago, Rock Island & Pacific Railroad Co.*, 788 F.2d 1280, 1283 (7th Cir.1986). As will be discussed later, a debtor has no duty to urge its creditors to file claims or to "follow up" as to those creditors who fail to do so. *Id.*

In our case, actual timely notice was sent to movants; the only problem was that the movants as a result of their own actions failed to receive the notice timely. The apparent reason why movants failed to receive the claims bar date notice was due to Kurt Winner's three-month vacation in Hawaii. He, not the debtor, caused his inability to receive notice timely. Had he designated an agent, such as his counsel in the pending New Jersey litigation, to receive notice there would likely be no need for this decision. Alternatively, he could have established a more reliable procedure for forwarding mail to his vacation address. Due process "does not require that notice sent by first-class mail be proven to have been received." *Weigner v. City of New York*, 852 F.2d at 651.

### 2. Constitutionality of Bankruptcy Rule 3003(c).

Claim bar dates are vital to the Chapter 11 reorganization process. "Absent the setting of a [claims] bar date, a Chapter 11 case could not be administered to a conclusion." *In re Waterman S.S. Corp.*, 59

B.R. 724, 726 (Bankr.S.D.N.Y.1986). Bar dates protect not only the debtor's interests, but creditors' interests as well. It establishes a date by which the plan proponent can determine which liabilities will be asserted against the estate. Factors such as classification, Code § 1122, treatment of a class of claims, Code § 1123(a), and impairment, Code § 1124, as well as allowability of claims, Code § 502, and confirmation of the plan, Code § 1129, require that there first be a known body of claims.

In Chapter 11 cases, B.R. 3003(c)(2) requires that unscheduled creditors, or creditors with claims scheduled as disputed, contingent or unliquidated, file proofs of claim. It further provides that "any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution." The Advisory Committee Note to this rule places the burden of determining the accuracy of scheduling claims on the creditor: "It is the creditor's responsibility to determine if the claim is accurately listed." As *Collier* states, "The creditor who is listed on the schedule of liabilities and relies on that listing will be limited to the claim as reflected in the schedule." 8 L. King, *Collier on Bankruptcy* ¶ 3003.04[1] at 3003–7 (15th ed. 1989). The Advisory Committee Note further provides that the court may order creditors whose claims are scheduled as disputed, contingent or unliquidated be notified of that fact, but the procedure is left to the discretion of the court.

▮ In our case, movants' claims were listed on the debtor's schedules filed June 2, 1988 as disputed and unliquidated. Movants admit that they timely received the § 341 Notice with the warning required by Official Bankruptcy Form 16: "Any creditor who desires to rely on the list has the responsibility for determining that he is accurately listed." Movants, however, contend that the § 341 Notice they received deprived them of due process for its failure to inform them how their claims were scheduled. Specifically they raise the constitutionality of B.R. 3003(c)(2) in placing the burden of inquiry on the creditor. In support of their argument, movants cite a

small body of cases that question the constitutionality of this rule for its failure to "mandate notice that would meet the requirements of due process relative to creditors with disputed, contingent or unliquidated claims." *In re Middle Plantation of Williamsburg, Inc.*, 36 B.R. 873, 876 (Bankr.E.D.Va.1984).

The debtor in *Middle Plantation* listed all of its debts as disputed, contingent or unliquidated due to the unavailability of adequate books and records. Although the creditors received timely notice of the filing of the case, they were not notified as to how their claims were listed. The bankruptcy court found B.R. 3003(c) to be unconstitutional for its failure to inform creditors of how they were scheduled. The court held, *"Prior to deadlines falling, they [the creditors] must be advised of the effect upon each specifically." Id.* at 874 (original emphasis). It reasoned that because creditors "are often at some distance" from the court and that it is "impractical" for record searches to be performed, therefore it is a *"lack of due process to so deal with creditors." Id.* (original emphasis).

Although other courts have followed *Middle Plantation, e.g., In re Job-site Industries, Inc.*, 78 B.R. 335, 336 (Bankr.S.D.Fla.1987); *Matter of Siegler Bottling Co.*, 65 B.R. 117 (Bankr.S.D.Ohio 1986), 8 L. King, *Collier on Bankruptcy* ¶ 3003.04[2] at 3003–8 (15th ed. 1989) ("doubt has arisen as to whether creditors are afforded due process by the procedure embodied in Rule 3003"), we, however, concur with the "majority view", *In re Frederes*, 98 B.R. 163, 164 n. 1 (Bankr.W.D.N.Y.1989), and find B.R. 3003(c) to be constitutional for the following reasons.

■ First, the Supreme Court does not appear to require such specificity in a notice. As noted earlier, the Supreme Court interprets due process as requiring creditors in a bankruptcy case to be given " 'reasonable notice' … before their claims are forever barred." *City of New York v. New York, New Haven & Hartford Railroad Co.*, 344 U.S. at 297, 73 S.Ct. at 301. And, in the earlier case of *Mullane v. Central*

*Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the Court outlined several factors delineating the quantum of notice necessary for it to be deemed reasonable. Klee & Merola, *Ignoring Congressional Intent: Eight Years of Judicial Legislation*, 62 Am.Bankr.L.J. 1, 20 (1988) ("the kind of notice that must be received to comport with due process requirements is governed by … *Mullane v. Central Hanover Bank & Trust Co.*"). Observing that the fundamental prerequisite of due process is the opportunity to be heard, the Court in *Mullane* held that this "right to be heard has little reality or worth unless the party is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Id.* at 314, 70 S.Ct. at 657. The notice must be reasonably calculated "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* To this end, the Supreme Court held, " 'The criterion is not the possibility of conceivable injury but the just and reasonable character of the requirements, having reference to the subject with which the statute deals' ". *Id.* at 315, 70 S.Ct. at 657 (quoting *American Land Co. v. Zeiss*, 219 U.S. 47, 67, 31 S.Ct. 200, 207, 55 L.Ed. 82 (1911). In sum, to meet due process standards the quantum of notice should be such that it informs interested parties that a matter is pending coupled with "adequate warning." *Id.* 339 U.S. at 317, 70 S.Ct. at 658. The Supreme Court does not demand more, nor do we.

The statement contained in the § 341 Notice, in conformity with Official Form 16 (pursuant to B.R. 3003(c)), cannot be construed as anything less than notice of the bar date with adequate warning. The version of Official Form 16 employed in our case contained this proviso:

Creditors whose claims are not listed or whose claims are listed as disputed, contingent, or unliquidated as to amount and who desire to participate in the case or share in any distribution must file their proofs of claim on or before the last day fixed for filing a proof of claim.

*Any creditor who desires to rely on the list has the responsibility for determining that he is accurately listed.* Movants' Exhibit 6 (emphasis added).

This statement clearly encompasses both notice of the existence of a claims bar date and the consequences of failing to file claims timely.

Second, although movants assert the purported unconstitutionality of B.R. 3003(c) as a general proposition, this argument ignores the facts of this case. It is unclear how movants, as plaintiffs in pending litigation against the debtor, could claim to be other than holders of disputed and unliquidated claims. The concern expressed in *Middle Plantation* was the apparent unfairness to creditors who have no knowledge of their status as disputed claimants. In fact, the District Court in a related matter concerning the same case clearly limited the holding of the bankruptcy court in *Middle Plantation* to situations in which the debtor failed to notify claimants that they were scheduled as unliquidated where they had no actual knowledge that their claim was listed by the debtor as unliquidated. *In re Middle Plantation of Williamsburg, Inc.,* 48 B.R. at 795–96. The District Court specifically held that the bankruptcy court's decision is inapplicable where a creditor knows that its claim is disputed, contingent or unliquidated.

In our case, movants were at all times aware of the disputed and unliquidated status of their claims against the debtor. In fact, they introduced into evidence a letter dated October 28, 1988 addressed to the New Jersey district judge concerning the pendency of the federal litigation against the debtor. Movants' Exhibit 1. This letter provided in pertinent part that the litigation would remain in an inactive status but could be returned to "active status by notice to the Court." *Id.* After the action was inadvertently dismissed by order of the district judge on February 24, 1989, Movants' Exhibit 2, movants advised the judge by letter dated April 25, 1989 that the action should not have been dismissed, Movants' Exhibit 3. This letter stated:

All counsel request that this matter not be dismissed and that it be continued on the inactive list pursuant to the parties' October 28, 1988 letter agreement.... All parties thought it advisable to monitor the bankruptcy proceedings and stay the Federal Court action. We continue in that belief, particularly since the corporation defendant is in the process of seeking approval of a plan of reorganization. *Id.*

■■■ These letters not only establish movants' continued awareness of the debtor's bankruptcy case, but also the disputed and unliquidated nature of their claims. Where a creditor has notice of the pendency of a bankruptcy case and is aware that it holds a disputed claim, notwithstanding the fact that it at no time received notice that its claim has been scheduled as such, the creditor is barred for its failure to file a claim. *In re Middle Plantation of Williamsburg, Inc.,* 48 B.R. 789 (E.D.Va. 1985). As the Ninth Circuit explained:

When the holder of a large, unsecured claim ... receives any notice from the bankruptcy court that its debtor has initiated bankruptcy proceedings, it is under constructive or inquiry notice that its claim may be affected, and it ignores the proceedings to which the notice refers at its peril. "Whatever is notice enough to excite attention and put the party on his guard and call for inquiry, is notice of everything to which such inquiry may have led. When a person has sufficient information to lead him to a fact, he shall be deemed to be conversant of it." *In re Gregory,* 705 F.2d 1118, 1123 (9th Cir. 1983) (quoting *D.C. Transit System, Inc. v. United States,* 531 F.Supp. 808, 812 (D.D.C.1982), *aff'd,* 790 F.2d 964 (1986)).

Movants cannot be deprived of due process when the § 341 Notice specifically warned that it was *their* "responsibility for determining" that their claim was "accurately listed." Movants' Exhibit 6. Further, placing of this burden of inquiry on the creditor pursuant to B.R. 3003(c) is reasonable. The creditor is in the best position to determine if its claim is accurately listed. If, for example, the debtor

incorrectly listed the claim as undisputed in an amount less than that reflected on the creditor's books, the creditor obviously could not rely on this notice.

We also note that although a creditor is not obligated to file a proof of claim, it may be the more prudent and better practice to file one. First, it avoids the necessity for the creditor having to check the accuracy of the debtor's schedules. Second, it avoids the problem of relying on the debtor's initial scheduling of a claim as undisputed where the debtor subsequently amends its schedules to list the claim as disputed. Under B.R. 1009, the debtor may amend its schedules *at any time* before the case is closed. Third, no matter how or in what amount the claim is scheduled, the filed proof of claim supersedes any scheduling of that claim. B.R. 3003(c)(4). Upon filing the proof of claim, regardless of how it is scheduled, the claim is deemed to be an allowed claim under Code § 502(a).

Fourth, it may not be feasible for the § 341 Notice to notify creditors of the status of their claims. A debtor may properly commence a Chapter 11 case with a skeletal petition accompanied only by a list of creditors with mailing addresses. Although B.R. 1007 requires the debtor to file completed schedules within 15 days of the petition, debtors in larger cases often obtain extensions of many months in length. Thus, notice to creditors informing them of their status as disputed, unliquidated or contingent could not be prepared until completed schedules were filed, which may not occur until much time has elapsed. Fifth, in the event that the Chapter 11 case is converted to a case under Chapter 7, all claims actually filed by a creditor in the superseded Chapter 11 case are deemed filed in the Chapter 7 case. B.R. 1019(4). The mere scheduling of an undisputed, liquidated, non-contingent claim in a Chapter 11 case causes the claim to be deemed allowed pursuant to Code § 1111(a). Upon conversion to Chapter 7, however, that claim is no longer deemed allowed and even holders of undisputed, liquidated and non-contingent claims must file proofs of claim. As one commentator urged:

... counsel would generally be wise to advise clients with actual knowledge of a corporate reorganization case to promptly file their proofs of claim with the Bankruptcy Court. The time involved in preparing and filing a proof of claim, weighed against the risks of not filing a claim or waiting until a bar date is set to file a claim, weigh clearly in favor of filing a claim without waiting for notice of the fixing of a bar date. An exception to this practice might exist in jurisdictions where courts are known to have adopted the practice of exercising "jurisdiction by ambush"—the exercise of core jurisdiction under 28 USC § 157(b)(2) over claims by a debtor against a claimant based on consent to jurisdiction implied by the claimant's act of filing a proof of claim.

Shapiro, *Issues In Litigation*, Norton Bankr.L.Advisor 8, 11 (Mar. 1989).

## B. Excusable Neglect As Cause

Movants next argue that their "excusable neglect" constitutes "cause" to deem their claims timely filed. B.R. 3003(c)(3) provides that the court shall fix the time within which proofs of claim may be filed and the court may "for cause shown" extend this claim bar date. B.R. 9006(b)(1), on the other hand, provides:

[W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion ... on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Several courts have held that B.R. 3003(c)(3) "must be read in conjunction" with B.R. 9006(b) and find that the only cause contemplated by B.R. 3003(c)(3) is "excusable neglect." *In re Vertientes, Ltd.*, 845 F.2d 57, 60 (3d Cir.1988); *In re South Atlantic Financial Corp.*, 767 F.2d 814, 817 (11th Cir.1985), *cert. denied*, 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1985); *Wright v. Placid Oil Co.*, 107 B.R. at 105; *In re AMWC, Inc.*, 109 B.R. 210, 212 (Bankr.N.D.Tex.1989); *In re Heater*

*Corp. of the Americas, Inc.*, 97 B.R. at 659; *In re Sasson Jeans, Inc.*, 96 B.R. 457, 459 (Bankr.S.D.N.Y.1989); *In re Mitchell*, 82 B.R. 583, 585 (Bankr.W.D.Okla.1988); *In re Larsen*, 80 B.R. 784, 786 (Bankr.E.D. Va.1987).

The term "excusable neglect" has variously been described as "words of art," *In re Manning*, 4 BCD 304, 305 (Bankr.D. Conn.1978) and construed to be a "flexible concept," *In re Webb*, 8 B.R. 535, 537 (Bankr.S.D.Tex.1981); *In re Carlton*, 72 B.R. 543, 546 (Bankr.E.D.N.Y.1987). As neither the Code nor the Bankruptcy Rules define this term, the "task of determining the existence of excusable neglect has appropriately been described as ... 'difficult.'" *Matter of Heyward*, 15 B.R. 629, 637 (Bankr.E.D.N.Y.1981) (quoting *In re Webb*, 8 B.R. at 536). An oft cited judicially-devised definition of this term, now more than a decade old, defines it as "the failure to timely perform a duty due to circumstances which were beyond the reasonable control of the person whose duty it was to perform." *In re Manning*, 4 BCD at 305; *In re South Atlantic Financial Corp.*, 767 F.2d at 817; *In re Sasson Jeans, Inc.*, 96 B.R. at 459; *In re Mitchell*, 82 B.R. at 585; *In re Waterman S.S. Corp.*, 59 B.R. at 727–28.

The burden of proving "excusable neglect" is on the party seeking to be relieved of the time bar. *Hanson v. First Bank of South Dakota, N.A.*, 828 F.2d 1310, 1314 (8th Cir.1987); *In re O.P.M. Leasing Services, Inc.*, 48 B.R. at 830; *In re Chateaugay Corp.*, 104 B.R. 617, 619 (Bankr.S.D.N.Y.1989); *In re Sasson Jeans, Inc.*, 96 B.R. at 459; *In re Carlton*, 72 B.R. at 546; *In re Waterman S.S. Corp.*, 59 B.R. at 728; *In re American Skate Corp.*, 39 B.R. 953, 953–54 (Bankr.D.N.H.1984); *In re Webb*, 8 B.R. at 537; *Matter of Anderson*, 5 B.R. 43, 47 (Bankr.N.D.Ohio 1980); *In re Rogers*, 2 B.R. 485, 487 (Bankr.W.D.Va.1979); *In re Advertising Distributors of America, N.Y.*, 1 BCD 1275, 1276 (Bankr.S.D.N.Y.1975). As the Second Circuit has observed, "[E]xcusable neglect calls for 'circumstances that are unique or extraordinary.'" *In re O.P.M.*

*Leasing Services, Inc.*, 769 F.2d 911, 918 (2d Cir.1985) (quoting *Maryland Casualty Co. v. Conner*, 382 F.2d 13, 17 (10th Cir. 1967)). Where, however, the "'delay could have been prevented by the diligence of the party,'" *In re Breining*, 8 B.R. 17, 21 (Bankr.S.D.N.Y.1980) (quoting *Matter of Starkey*, 1 C.B.C. 138, 142 (Bankr.W.D. Wis.1973)), an extension will not be granted. Indeed, "'ordinary negligence is not enough.'" *Id.*

Factors considered in determining excusable neglect are: (1) the adequacy of the time-bar notice provided; (2) the source of the delay and the sophistication of the creditor; and (3) the prejudice that will inure to the other party should the failure to act timely be overlooked. *Wright v. Placid Oil Co.*, 107 B.R. at 106; *In re O.P.M. Leasing Services, Inc.*, 48 B.R. at 830–31; *In re Murchison*, 85 B.R. 37, 40 (Bankr.N.D.Tex.1987); *In re Horvath*, 20 B.R. 962, 966–65 (Bankr.S.D.N.Y.1982); *Matter of Heyward*, 15 B.R. at 636.

As to the first factor, movants allege that the notice of the claims filing bar date was inadequate as they did not physically receive it until after the time had expired. While some courts have been inclined to find excusable neglect where it was uncertain whether the creditor received adequate notice, *In re Webb*, 8 B.R. at 537; *Hanson v. First Bank of South Dakota, N.A.*, 828 F.2d at 1314; *In re Heater Corp. of the Americas, Inc.*, 97 B.R. at 659, others find the neglect inexcusable where the notice is adequate, *In re Young*, 1 B.R. 387, 391 (Bankr.M.D.Tenn.1979).

Movants admit receiving the § 341 Notice which informed them that claims should be filed, as well as the Claims Bar Order. This was not a situation in which notice of the bar date was not sent, *e.g.*, *In re Heater Corp. of the Americas, Inc.*, 97 B.R. 657 (Bankr.S.D.Fla.1989), or an incorrect mailing address was utilized, or less than the requisite time for notice was given, *e.g.*, *Matter of Robintech, Inc.*, 863 F.2d 393 (5th Cir.1989), *cert. denied sub. nom. Bullock v. Oppenheim, Appel, Dixon & Co.*, —— U.S. ——, 110 S.Ct. 55, 107

L.Ed.2d 24 (1989). Where a creditor knows of the bankruptcy case and receives actual notice of the claims bar date, excusable neglect is not established. *Matter of Arosemena*, 65 B.R. 246, 247–48 (Bankr.M.D. Fla.1986). Thus, when creditors, such as movants, are given timely notice of both the need to file claims and the claims filing bar date, and chose not to file claims, they forfeit the opportunity to have their late claims deemed allowed as timely.

 As to the second factor, the source of the delay and the sophistication of the creditors, movants assert that Kurt Winner failed to receive notice of the claims filing bar date because he was away on vacation and that his step-son failed to forward the notices to him. We note that "[p]roof of excusable neglect requires proof that 'the failure to timely perform a duty was due to circumstances *which were beyond the reasonable control of the person whose duty it was to perform.*'" *Wright v. Placid Oil Co.*, 107 B.R. at 107 (quoting *In re South Atlantic Financial Corp.*, 767 F.2d at 817) (emphasis added); *In re AMWC, Inc.*, 109 B.R. at 212; *In re Mitchell*, 82 B.R. at 585. In our case, however, movants have shown that their failure to respond timely to the notices they received resulted from either a breakdown in their procedures for processing notices or from ordinary negligence. Neither of these, however, are recognized as factors sufficient to constitute excusable neglect. *In re Bracey*, 89 B.R. 6, 8 (Bankr. D.Md.1988); *Matter of Heyward*, 15 B.R. at 636; *Matter of Starkey*, 1 C.B.C. at 142.

Where the litigants' "own internal procedures are the cause of a failure to comply with proper legal procedures courts generally refuse to grant relief from the consequences of the lack of compliance." *In re Biddy*, 7 B.R. 50, 52 (Bankr.N.D.Ga.1980); *In re American Skate Corp.*, 39 B.R. at 954 ("internal problem of misfiling ... clearly would not justify an extension of the claims deadline"); *In re O.P.M. Leasing Services, Inc.*, 35 B.R. 854 (Bankr.S.D. N.Y.1983), *aff'd in part*, 48 B.R. 824 (S.D. N.Y.1985), *In re Horvath*, 20 B.R. at 966. Here, it was not the result of "circumstances beyond the reasonable control" of

the movants, *In re Underground Utility Construction Co.*, 35 B.R. 588, 589 (Bankr. S.D.Fla.1983), but the result of Kurt Winner having absented himself for a three-month vacation without making adequate arrangements for the forwarding on to him of the bankruptcy related notices. This court has previously held that an extension will not be granted for excusable neglect if the delay is due to a lack of due diligence. *In re Breining*, 8 B.R. 17 (Bankr.S.D.N.Y. 1980).

Further, movants do not claim that any misunderstanding existed between their attorneys and themselves, a ground often considered as constituting excusable neglect. In fact, movants' attorneys asked Winner to forward all notices regarding the bankruptcy to them. Winner failed to do this.

> In sum, it is clear that when a party fails to file in a timely manner due to a "chosen course of action and the circumstances were within the party's reasonable control," the courts will not offer relief from the choice taken. An extension will not be granted if the delay was due to the lack of diligence of the applicant.

*Matter of Arosemena*, 65 B.R. at 248 (citations omitted); *Hanson v. First Bank of South Dakota, N.A.*, 828 F.2d at 1314–15 ("Conduct does not constitute excusable neglect, however, when the delay was within the creditor's control ... and could have been prevented by the exercise of diligence by the party failing to perform."); *In re Burke*, 76 B.R. 62, 64 (Bankr.D.Vt.1987) (excusable neglect not established where creditors actively participated in case but "at the same time ignored the status of their claim").

 We conclude that where a creditor receives a bar date order, "its failure on its own to forward same to its Attorney or to communicate with its counsel was not reasonable and was a substantially contributing factor to what occurred in this case," and defeats a finding of excusable neglect. *In re AMWC, Inc.*, 109 B.R. at 214.

As to the alleged lack of prejudice to the debtor, the third factor, movants fail to

meet their burden on this issue as well. A claims bar date plays a critical role in the reorganization process of a Chapter 11 case. One court explained:

The bar date is not imposed simply to benefit the debtor by barring claims due to the passage of time. The bar date is imposed so that the bankruptcy case can be administered. Each creditor is required to file its proof of claim early in the bankruptcy case so that the other creditors and the bankruptcy trustee, who acts on behalf of all creditors, will know what claims must be dealt with in the case.

*In re Miller,* 90 B.R. 317, 322 (Bankr.E.D. Tenn.1988), *aff'd,* 118 B.R. 76 (E.D.Tenn. 1989); *In re Chateaugay Corp.,* 104 B.R. at 621; *In re Waterman S.S. Corp.,* 59 B.R. at 728 ("after a reasonable time, a debtor must be able to start its process of reorganization and its creditors must be able to learn what they will receive under a plan").

A "first step" in a debtor's reorganization process is identification by the plan proponent of the debtor's "creditor body and ascertainment of the dollar amount of claims outstanding." *In re Waterman S.S. Corp.,* 59 B.R. at 728. The failure to do this "prejudices the entire community of interests especially where the debtor has filed its plan of reorganization after having successfully identified the universe of claims and having come to terms with many of its claimants." *Id.* As a result, a claim filing bar date is "strictly enforced." *Wright v. Placid Oil Co.,* 107 B.R. at 106; *In re Cmehil,* 43 B.R. 404, 408 (Bankr.N.D. Ohio 1984). It is "generally improvident to grant permission to file late proofs of claim." *In re O.P.M. Leasing Services, Inc.,* 48 B.R. at 831.

The prejudice to the debtor and creditors is apparent should movants' claims be deemed timely filed. A claim filing bar date serves to promote finality. Negotiating, formulating and funding a plan of reorganization ordinarily requires a known body of "allowed" claims. "Trustees, creditors, debtors, and even bankruptcy judges are entitled to some measure of finality in bankruptcy proceedings." *Matter of Pagan,* 59 B.R. 394, 396 (D.P.R.1986).

### C. Cause in General

■ We next consider whether movants established "cause" in general under B.R. 3003(c)(3). There is some dispute as to whether the cause requirement of B.R. 3003(c)(3) is something separate and apart from the excusable neglect standard of B.R. 9006(b)(1). *In re AMWC, Inc.,* 109 B.R. at 212 n. 1 ("Some debate exists as to whether the controlling standard for extending a Bar Date is 'for cause' under Rule 3003(c) or for 'excusable neglect' under Rule 9006(b)."). Movants here presumably rely on those cases holding the "for cause" standard of B.R. 3003(c)(3) is distinct from the excusable neglect standard of B.R. 9006(b). *E.g., In re Herd,* 840 F.2d 757, 758–59 (10th Cir.1988); *In re Terex,* 45 B.R. 290, 292 (Bankr.N.D.Ohio 1985) (B.R. 3003(c)(3) "appears to allow the court greater discretion than Rule 9006(b)(1)").

Movants argue that general equitable principles constitute cause under B.R. 3003(c)(3). This Rule, however, has not been interpreted to include general equitable principles. *In re Stern,* 70 B.R. 472, 474–75 (Bankr.E.D.Pa.1987) (court has "no power to extend [claims filing] bar date for equitable reasons"). As the 4th Circuit observed:

Bankruptcy Rule 3003(c)(2) expressly requires creditors with a claim scheduled by the debtor as "disputed, contingent or unliquidated" to file a proof of claim. Therefore, regardless of actual notice to the debtor, Congress has established a scheme which requires the filing of creditors' claims within a set time limit to promote certainty and finality. The clear Congressional intent to require filing of valid proofs of claims within the established time limits precludes any exceptions based on general equitable principles. While the effect of the bar date appear harsh, any other result would undermine the clear purpose of the Bankruptcy Rules. *Maressa v. A.H. Robins Co.,* 839 F.2d 220, 221 (4th Cir.1988) (citation omitted), *cert. denied,* 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 53 (1988).

The 5th Circuit expressed similar concerns in the following:

> The purpose of the bankruptcy laws is quickly and effectively to settle bankrupt estates. Under the Bankruptcy Code and rules, creditors play a zero-sum game in which a failure to navigate effectively through various intricate procedures can mean total defeat. Moreover, because such procedures are thought to be necessary to protect the bankrupt and the creditors, exceptions cannot be made every time a creditor claims hardship. Frequent players in the bankruptcy arena ... know this and are aware that deadlines are important and should not be heard to complain of unfairness except under the most egregious circumstances. To allow the late-filed claims of creditors ... under the circumstances of this case, would be unfair to all of the creditors who filed on time, despite possible hardships, and whose slice of the bankruptcy pie would be smaller as a result. In general, it is the other diligent creditors who will be harmed by permitting late claims, not the debtor whose actions may have been a factor in the late filing. *Matter of Robintech, Inc.*, 863 F.2d 393, 398 (5th Cir.1989) (citations omitted).

Accordingly, we find that the movants fail to establish cause pursuant to B.R. 3003(c)(3).

## D. Fraud, Misrepresentation or Misconduct by Debtor's Attorney

■ Movants assert that the debtor's attorney committed fraud, misrepresentation or misconduct by failing to disclose the pending claims bar date in the telephonic conversation that took place on April 18, 1989 between their attorney and Jody Kava, attorney for the debtor. During that conversation, Kava was asked whether a recent mailing had been made and what was the "nature of the mailing." Tr. at 68 (May 11, 1989). She confirmed that there was a mailing and stated that it included several documents. She did not state that the mailing contained a Claims Bar Order that required all claims to be filed that very day.

We note first that movants' counsel had not asked Kava whether there was a claims bar date yet fixed in the case during the April 18, 1989 telephone conversation or at anytime during the pendency of the case. We also note that debtor gave proper notice of the bar date through a series of mailings directly to the movants. Had movants' counsel wanted to receive these notices as well, they should have filed a request for notices. This was not done.

■ Instead, movants allege that the debtor's attorney violated her "fiduciary and ethical obligation to advise the attorneys for the creditors of the bar date." Movants' Brief at 21. Movants rely on Fed.R.Civ.P. 60(b)(3). This Rule states:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons ... fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party....

The sanctity of orders and finality are not lightly disturbed by courts. Fed.R.Civ.P. 60(b) and its subdivisions are strictly construed. An order will not be set aside if the conduct alleged does not come within the meaning of the Rule.

Movants urge us to find that debtor's failure to inform their counsel during a telephone conversation of the bar date for filing claims constitutes grounds to set the bar order. We, however, agree with the Seventh Circuit which held in *Matter of Chicago, Rock Island & Pacific Railroad Co.*, 788 F.2d 1280 (7th Cir.1986), that the trustee had no duty to "follow up" on whether the creditor did indeed file a claim in the case. *Id.* at 1283. That case concerned a railroad reorganization in which the creditor received a proof of claim form, but failed to file a timely claim. Noting that the mailing of the proof of claim form constituted actual notice, the court stated, "It was not his duty to write or call [the creditor] again, to urge her to sue him." *Id.* The court also observed that the trustee was not at fault in failing to notify the prospective claimant of the "impending

conclusion of the case and discharge of unfiled claims." *Id.*

Likewise, we do not view it to be the debtor's duty to urge its creditors to file proofs of claim after adequate notice has been provided to them.

### E. Informal Proofs of Claim

As a final argument, movants contend that they timely filed "informal" claims, and that the proofs of claim filed after the bar date were merely amendments to their timely filed informal claims.

The allowance of informal proofs of claim has developed as an equitable principle over the years. One of the fundamental prerequisites to a finding that a creditor has filed an informal proof of claim is that the document purportedly constituting the informal proof of claim "contain a specific demand setting forth the amount and nature of the debt and the intent to hold the Debtor liable." *Matter of Dingleman,* 107 B.R. 100, 101 (Bankr.E. D.La.1988); *In re Franciscan Vineyards, Inc.,* 597 F.2d 181, 183 (9th Cir.1979), *cert. denied sub nom. Grover v. County of Napa,* 445 U.S. 915, 100 S.Ct. 1274, 63 L.Ed.2d 598 (1980); *In re Middle Plantation of Williamsburg, Inc.,* 48 B.R. at 795; *In re Mitchell,* 82 B.R. at 586; *In re Stern,* 70 B.R. at 476; *In re Sherret,* 58 B.R. 750, 751 (Bankr.W.D.La.1986); *In re Nucorp Energy, Inc.,* 52 B.R. 843, 845 (Bankr.S.D. Cal.1985). Mere awareness by the debtor of a creditor's claim through, for example, telephone conversations or general correspondence is insufficient. An informal proof of claim must be set out in a writing with the requisite degree of specificity. *Matter of Dingleman,* 107 B.R. at 101.

Movants fail to identify what documents, if any, constitute their informal proofs of claim. The record before us contains no evidence indicating that informal proofs of claim were filed, and movants have failed to sustain their burden in this regard.

### III. CONCLUSIONS OF LAW

1. This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

2. Movants have failed to sustain their arguments to allow their late-filed proofs of claim to be deemed timely filed.

3. Movants' motion is denied. A separate Order shall issue in conformity herewith.